## SWANCEY v. PARRISH.

1. EVIDENCE—CHATTEL MORTGAGE.—Can the execution of a chattel mortgage made in May, 1897, be proved otherwise than by subscribing witness?

2. IBID.—WRITTEN INSTRUMENTS.—The execution of any written instrument except a will can be shown by other evidence than that of the subscribing witness, where he is beyond the jurisdiction of the Court.

3. CHATTEL MORTGAGE—NOTES AND BILLS.—Where a party executes a chattel mortgage to secure the payment of a note, and it appears that the note was never signed, the mortgagee may recover in an action at law the amount recited in the mortgage to be the indebtedness secured thereby.

4. EVIDENCE.—Bilateral contract for sale and purchase of interest in saw mill is competent evidence on amount due under contract in suit on note alleged to have been given for the purchase price.

Before BENET, J., Saluda, May, 1900.   Reversed.

Action by J. D. Swancey against L. C. Parrish.   From order of nonsuit plaintiff appeals.

*Mr. Eugene W. Able,* for appellant, cites: *Witness not necessary to chattel mortgage:* 27 S. C., 262.   *Seizure and sale of chattel under mortgage only satisfies debt pro tanto:* 31 S. C., 161.

*Mr. Edwin F. Strother,* contra (no citations).

January 6, 1902.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.   The plaintiff, in his complaint, alleges that the defendant, on the 7th of August, 1897, executed his undertaking for the payment of the sum of $550, and to secure the payment of the same, on the same day executed his mortgage on a Tozer steam engine and boiler; that the condition of said mortgage has been broken; that the sum of $120 has been paid on the said contract, by

the delivery of a mule worth that sum of money, and that the balance, to wit: the sum of $430, remains unpaid, and judgment is demanded for the same, together with interest from the said 7th of August, 1897, and the costs of this action. The defendant answered as follows: "That upon information and belief the defendant denies each and every allegation contained in the plaintiff's complaint." It does not appear that either the complaint or answer was verified. The case came on for trial before his Honor, Judge Benet, and a jury at the May, 1900, term of the Court for Saluda County.

At the trial the plaintiff offered the following testimony: *B. F. Forrest* was sworn as a witness, and being shown a paper marked exhibit 2, testified as follows: "I recognize the signature on the left at the bottom of the paper. The handwriting is familiar to me; it is that of J. O. Edwards. J. O. Edwards now lives in Nashville, Tennessee, being a student in Vanderbilt University at that place." The plaintiff was next sworn as a witness, and being shown the same paper, testified as follows: "I recognize signature at the bottom on the right hand side of the paper. The signature is that of L. C. Parrish. I saw him sign the paper. J. O. Edwards witnessed the signing of the paper by Parrish." The plaintiff then offered said paper in evidence. "The Court held that exhibit No. 2 purported to be a chattel mortgage, and its execution must be proven by the attesting witness, unless it appears that the testimony of such attesting witness cannot be had; and it is not sufficient that the attesting witness is beyond the borders of the State, but it must be shown that he is beyond the seas, or dead, or insane, before the execution of such paper can be proven otherwise. The said exhibit No. 2 is, therefore, ruled out." The plaintiff's counsel then handed to plaintiff exhibit No. 1, who was still on the stand as a witness, and he testified as follows: "I recognize one of the signatures at the bottom of the said paper as my own, and I signed the said paper. The other signature to that paper is that of L. C. Parrish. He signed it

16—62

in my presence, and delivered the paper to me after signing his name to it." That paper—exhibit No. 1—was then offered and admitted in evidence, and reads as follows: "This is to certify that L. C. Parrish has bought Mr. J. D. Swancey's interest in the saw mill and engine, known as Swancey & Parrish's mill, as follows: Mr. L. C. Parrish is to pay Mr. J. D. Swancey the following in settlement of his interest: one mule valued at $120, balance in lumber at the following prices: framing, fifty cents per hundred feet; flooring and ceiling, at sixty cents per hundred feet; weather-boarding, at eighty cents per hundred feet. To the amount of $550—mule and lumber. Mr. J. D. Swancey is to make L. C. Parrish a clear title to said engine. Mr. L. C. Parrish is to assume all of the liabilities of Swancey & Parrish when the contract is carried out. All the unsettled bills now due Swancey & Parrish are to be equally divided by August 15, 1897. The mortgage now over the mule mentioned above is to be paid by L. C. Parrish. Mr. L. C. Parrish is to pay J. D. Swancey 8,000 feet of lumber per month at the mill until the above contract is carried out. L. C. Parrish (seal). J. D. Swancey (seal). Witness: Avory Bland." The plaintiff further testified as follows: "That Parrish has only paid me $120 upon the $550 agreed upon as the price of the mill. I have made demands upon him for the payment of the balance, and have caused demands to be made upon him for the same, but no part of the said balance of $430 has ever been paid. I caused demand to be made upon him, Parrish, for the lumber as agreed upon in the contract."

At the close of the testimony for the plaintiff, which is stated above, the defendant moved for a nonsuit, upon the grounds stated in the order of the Court granting the same, which order reads as follows: "The above stated cause came on for trial at the May term of Court for said county before a jury. After the close of plaintiff's testimony, the defendant moved for a nonsuit upon the ground that the testimony did not sustain the allegations of plaintiff's complaint, in that

the complaint sued on a money demand for $550, and no such demand was proven by plaintiff's testimony, and that there is no testimony to go to the jury upon the issues raised by the complaint. Therefore, upon motion of Edwin Folk Strother, defendant's attorney, it is ordered, that the said nonsuit be granted, with costs to the defendant."

The plaintiff appeals upon the several grounds set out in the record, which need not be set out here as they raise substantially but two questions: 1st. Whether the Circuit Judge erred in holding that a paper purporting to be a chattel mortgage, which appeared upon its face to have been signed in the presence of a subscribing witness, could not be proved except by such subscribing witness, unless it was first shown that the testimony of such witness could not be obtained; and that "it is not sufficient that the attesting witness is beyond the borders of the State, but it must be shown that he is beyond the seas, or dead, or insane, before the execution of such paper can be proven otherwise." 2d. Whether there was error in granting the nonsuit when there was testimony tending to show that defendant had entered into a written contract to pay the stipulated sum of $550 to the plaintiff for his interest in a mill, and there was also testimony tending to show that while defendant had paid $120 in part of said contract price, he had not paid the balance thereof.

As to the first question, we think it clear that the Circuit Judge erred in ruling out the paper marked exhibit No. 2, purporting to be a chattel mortgage, upon the ground that the testimony of the subscribing witness was not offered to prove its execution. In the first place, at the time the transaction out of which this controversy arose there was no law requiring that a chattel mortgage should be executed in the presence of a subscribing witness (*Talmadge* v. *Oliver*, 14 S. C., 522, and *McGowan* v. *Reid*, 27 S. C., 262) ; and even if, as is suggested in the argument, the law has since been changed by statute, surely such statute could not affect a mortgage executed several years prior to its passage. If, then, the law did not require this mort-

gage to be executed in the presence of a subscribing witness, it would seem that this case does not fall within the rule applying to certain papers which must be executed in the presence of subscribing witnesses. This view seems to have been taken in the case of *Hall* v. *Phelps,* 2 Johns., 451. But, as there is some conflict of authority upon this point and we have no case in this State upon the subject, so far as we are informed, we will not rest our conclusion upon this ground, though we are very much inclined to think that, in view of the disposition both of courts and of legislatures to relax the strictness of the common law rules of evidence, it would be more in accordance with reason, and more conducive to a prompt disposition of causes, to hold that the execution of any written instrument except a will, can be proved by *any* testimony, otherwise competent, and that it is not necessary to introduce the subscribing witness for that purpose. But waiving this, there is another ground upon which the testimony offered and ruled out should have been received. Even when the ancient rule was recognized, it was always held that, where it is shown that the subscribing witness to any paper is beyond the jurisdiction of the State or country in which it is desired to prove the execution of such paper, that fact may be proved by other evidence. As is said in I. Greenlf. on Ev., sec. 572, in speaking of this rule: "A third class of exceptions to this rule arises from the circumstances of the witnesses themselves, the party either from *physical* or *legal* obstacles, being *unable to adduce* them. Thus, if the witness is proved or presumed to be dead, or cannot be found after diligent inquiry, or is resident beyond the sea, or is out of the jurisdiction of the Court * * * the execution of the instrument may be proved by other evidence." See, also, the cases cited in the notes to that section, which abundantly sustain the text. So that even conceding the rule in its fullest extent, that a subscribing witness to a paper must be introduced to prove the execution of the paper, yet this case falls under one of the well recognized exceptions to the rule; for the undisputed testi-

mony was that the subscribing witness to the paper marked exhibit 2—J. O. Edwards—was beyond the jurisdiction of the Court, to wit: in the State of Tennessee, where the process of our Court could not reach him. It is clear, therefore, that the Circuit Judge erred in excluding the said paper—the chattel mortgage—because there was direct testimony that the defendant had signed the same and delivered it to the plaintiff. And as that paper contained an admission in writing, signed by the defendant, that he was indebted to the plaintiff in the sum of $550, for that paper commenced with the following recital: "Whereas, I am indebted to J. D. Swancey in the sum of five hundred and fifty dollars," it was clear that such paper offered some evidence of the indebtedness of the defendant to the plaintiff, the absence of which was made the ground of the nonsuit, and hence there was error in granting the nonsuit. The fact that the language of the recital above quoted was followed by these words: "and have given my note therefor, of even date with these presents (a copy of which is hereto annexed)," and the fact that the copy of the note thus referred to does not appear to have been signed by the defendant, cannot affect the question, for the case of *Nichols* v. *Briggs,* 18 S. C., 473, shows that where a note is secured by a mortgage, and an action on the note is barred by the statute of limitations, still an action on the mortgage could be sustained, provided it contained language recognizing the indebtedness secured by such mortgage; and in the case of *Plyler* v. *Elliot,* 19 S. C., 257, the majority of this Court went still further and held that even if the note was rendered void by a fraudulent alteration, the debt might still be recovered by a foreclosure of the mortgage given to secure the payment of such note, provided such mortgage contained recitals recognizing the indebtedness mentioned in the note. These cases and the authorities therein cited show that, even if no note had been given, the indebtedness recognized in the mortgage might be recovered in an action on the mortgage. So that the recital in this mortgage was clearly competent to show an

indebtedness on the part of the defendant to the plaintiff.

As to the second question raised by the sixth exception, the paper marked exhibit 1, which was admitted in evidence, contained evidence of the indebtedness of the defendant to the plaintiff in the sum of $550, for that was the written contract between the parties, signed by both of them; and its terms, as set out above, show that defendant bought from the plaintiff his interest in the mill which they seemed to have owned jointly, for the sum of $550, which was to be paid, partly by the delivery of a mule valued at $120, and the balance in lumber at stipulated prices, to be delivered at the mill, at the rate of 8,000 feet per month; and the testimony of the plaintiff shows that no part of the purchase money had been paid except the sum of $120, by the delivery of the mule, and that the balance remained wholly unpaid, although the same had been demanded from defendant. There was, therefore, sufficient testimony, at least, to carry the case to the jury, and hence there was error in granting the nonsuit.

It is stated in the "Case" that after the commencement of this action, the plaintiff seized the engine, &c., covered by the chattel mortgage, and after advertisement sold the same for the sum of $300. But that cannot in any way affect the question of nonsuit—which is the only question before us. For even if that be true, and the whole amount of the proceeds of such sale have been or should be applied to the plaintiff's claim, there would still remain a balance of $130 due to the plaintiff, if the testimony offered by the plaintiff had been received, and believed by the jury.

The judgment of this Court is, that the judgment of the Circuit Couart be reversed, and that the case be remanded to that Court for a new trial.