## 10744

### MATHESON v. CARIBO ET AL.

#### (109 S. E. 102)

1. BILLS AND NOTES—GENUINENESS OF INDORSEMENT BY MARK HELD FOR JURY.—In action on note, whether defendant's intestate indorsed note *held* for jury, notwithstanding testimony of witness, whose name appeared on note as that of subscribing witness to intestate's signature by her mark, that intestate had not made the mark.

2. TRIAL—VERDICT NOT DIRECTED UNLESS REASONABLE MINDS CAN DRAW BUT ONE INFERENCE FROM EVIDENCE.—A verdict should not be directed except where reasonable minds can draw but one inference from the evidence; that is, where there is an entire absence of evidence to support a contrary conclusion.

3. SIGNATURES—SUBSCRIBING WITNESS' DENIAL OF EXECUTION OF SIGNATURE BY MARK NOT CONCLUSIVE.—Denial of genuineness of signature by mark by subscribing witness thereto is not conclusive that signature is not genuine, but the mark can be shown to have been in fact made by person by whom it purports to have been made by other evidence.

Before MOORE, J., Marlboro. Reversed and new trial ordered.

Action by J. J. and G. D. Matheson against Jas. H. Caribo and Julian McLaurin as administrator of M. J. Hood, deceased. From directed verdict in favor of the defendant McLaurin, as administrator, the plaintiffs appeal.

*Mr. W. M. Stevenson,* for appellants, cites: *Directed verdict improper where there is any evidence*: 98 S. C. 282; *Necessary proof of signature*: 11 S. C. 444; 62 S. C. 244, *Not necessary to prove a mark by subscribing witness*: 20

S. C. 570; 11 Enc. Law (2d Ed.) 598; Jones Evid. Sec. 527-537. *Admitted signature to check signed simultaneously is strong circumstance to corroborate signature to the note*: 2 Brev. 37. *Jury should have been allowed to compare admitted signature with disputed signature*: 18 S. C. 506; 41 S. C. 191; 24 S. C. 295; 33 S. C. 116; 85 S. C. 363.

*Mr. J. W. LeGrand*, for respondent. *No citations.*

Nov. 4, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

I think that under the evidence in this case the issue of fact as to the indorsement by Mrs. Hood of the Caribo note should have been submitted to the jury, and for that reason I dissent from the judgment of the Court approving the Circuit Judge's direction of a verdict in favor of the defendant.

The rule is well established that the Circuit Judge should direct a verdict in those instances only where reasonable minds could draw but one inference from the evidence; this of course would occur where there is an entire absence of evidence to support a contrary conclusion. I do not think that result can be attained in this case.

The evidence tends to establish the following facts: In the fall of 1914 Robert H. Hood, son of Mrs. M. J. Hood, the defendant's intestate, was indebted to the plaintiff, whom I shall refer to as "Matheson," in the sum of $1,166.12, on account of goods sold. The account was secured by three notes and mortgages given by Robert H. Hood to Matheson aggregating $1,595.60, and by a note for $241.77, given by the defendant Caribo to Robert H. Hood, due October 15, 1914, which was assigned to Matheson as collateral security to his obligations. When the Caribo note fell due on October 15, 1914, he renewed it,

making the new note for the same amount payable to
Matheson instead of Hood, and due November 15, 1914.
Matheson was pressing Robert H. Hood for the debt of
$1,166.12, and his mother, Mrs. J. M. Hood, was disposed
and anxious to help her son out of his financial difficulties.
It is positively testified to by one of the Mathesons: That
he went to the home of Mrs. Hood on October 29, 1914,
for the purpose of getting the matters between them and
Robert H. Hood settled. That in his presence Mrs. Hood
agreed with Robert H. Hood to advance him $925.95, in-
dorse the Caribo note for $241.77, and take an assignment
from Matheson of the notes and mortgages they held against
Robert H. Hood. That a bank check was drawn by Mrs.
Hood for $925.95, payable to Matheson and turned over to
him. This check was signed by Mrs. Hood by her mark and
witnessed by another son or son-in-law, J. M. Hood, who at-
tended to all of her business. The notes and mortgages of
Robert H. Hood were transferred to Mrs. Hood; the date
of the transfer being the same as that of the check, October
29, 1914. Matheson left, taking with him the check and the
Caribo note, indorsed

"M. J. x Hood.  Witness: J. M. Hood."

                                   her
                         mark

He collected the check and turned the Caribo note  over
to Mr. Powell, a member of the firm.

The Caribo note not having been paid at maturity, this ac-
tion was instituted against Caribo and the respondent Mc-
Laurin as administrator of the estate of Mrs. Hood. The
complaint, in addition to the usual allegations, contains the
allegation:

"That before delivery and in order that the said Mathe-
son Bros. should accept the same, M. J. Hood indorsed said
note."

This allegation is not sustained by the evidence, the plain-
tiff clearly showing that the Caribo note had been renewed

by him on October 15, 1914,. placed among the assets of the firm and taken from thence when one of the plaintiffs started to Mrs. Hood's house for the .purpose of settling matters. No point, however, appears to have been made upon this discrepancy; the issue being upon the execution of the indorsement by Mrs. Hood, which was disputed in the answer. .

Upon the trial of the case J. M. Hood, whose name appears as a witness to Mrs. Hood's indorsement by her mark, was called as a "hostile" witness by the plaintiffs. He practically admitted his signature, but denied that his mother signed the indorsement or knew anything whatever about the note. Other witnesses for the defendant testified to very much the same effect. .

The Circuit Judge's ruling upon the motion for a directed verdict was to the effect that the subscribing witness should be produced, and should he, although admitting his signature, deny the execution of the instrument, that would be an end of the matter; and there would be "no room for presumption." I think that this is an erroneous conception of the law. It practically puts the .proponent of the document at the mercy of the self-interest, forgetfulness, or rascality of the subscribing witness, and limits the proof of the execution of a document to the testimony of a subscribing witness.

It must be remembered in the first place  that the paper in question is not one which is required by law to be witnessed. While the general practice is to have a witness to the signature of one who signs by mark, I know of no law which requires it, but regard it as more a matter of convenient proof than anything else. .

"A note executed by a mark may be proved by one who witnessed it, whether he was named as a subscribing witness or not." *Robinson v. Robinson,* 20 S. C. 567, at page 570. .

"We are very much inclined to think that, in view of the disposition both of the Courts and of the Legislatures to relax the strictness of the common-law rules of evidence, it would be more in accordance with reason, and more conducive to a prompt disposition of causes, to hold that the execution of any written instrument except a will can be proven by any testimony, otherwise competent, and that it is not necessary to introduce the subscribing witness for that purpose." *Swancey v. Parrish,* 62 S. C. 240, at page 244, 40 S. E. 554, 555.

But assume for the moment that the signature was required to be witnessed, what is the law? The proponent has done his duty when he produces the subscribing witness; he is not bound hand and foot by the answers of that witness.

This Court has declared in the case of *Merck v. Merck,* 89 S. C. 347, at page 351, 71 S. E. 969, 971 (Ann. Cas. 1913A, 937) :

"We are of the opinion, however, that the Circuit Judge erred in excluding evidence of the handwriting of the persons whose names are on the paper as subscribing witnesses. The defendant Mann was in this plight: Mrs. L. C. Merck, one of the persons whose names were subscribed as witnesses to the alleged deed from Blumer Merck to C. L. Merck, was hostile, and, upon being put on the stand, testified in effect that the deed was not delivered. The other witness, Hester, was excluded because disqualified by interest. Under these conditions the defendant Mann had a right to introduce other testimony tending to prove the execution of the deed; and evidence of the handwriting of the witnesses, of the grantor's acknowledgment of the validity of the deed after its execution, and of any facts tending to show that the deed had been executed, was clearly admissible. Land titles would be very insecure if they should fail whenever the subscribing witnesses might

deny that they witnessed the execution of the deed, or might become for any cause incompetent to testify to its execution. It is true in proving a deed the subscribing witnesses must be produced or their absence accounted for, but manifestly the title cannot be made to depend entirely on their testimony. Whenever the witnesses are dead or inaccessible, or have become incapacitated, or deny the execution in their presence, or for any cause are unable or unwilling to prove the execution, then other evidence may be introduced. This is a principle of general recognition. *Pearson v. Wightman,* 1 Mill, 336, 12 Am. Dec. 636; *Congdon v. Morgan,* 14 S. C. 594; *Gable v. Rauch,* 50 S. C. 95, 27 S. E. 555; *Brucke v. Hubbard,* 74 S. C. 144, 54 S. E. 249; *Buchanan v. Simpson* (Ga.) 31 S. E. 105; Greenleaf on Evidence, Vol. 1, p. 762; 11 A & E. Ency. 598."

That was the case of a deed where subscribing witnesses are required by the law. The cases and authorities cited by the Court are full to the point. Would it not be a remarkable situation, take this case, for instance, that the plaintiffs who are debarred by the Code from testifying must be absolutely concluded by the testimony of a subscribing witness directly interested in the result?

Now let us see whether or not there is any evidence, outside of the denial of the subscribing witness, which tends to show that Mrs. Hood signed the indorsement. If so, an issue of fact was presented for the jury, and it was error to direct a verdict.

In the first place, as Mr. Wigmore says (Vol. 1, § 157) :

"The existence of the document purporting to be signed by A. is, under all circumstances, some evidence of A.'s genuine execution of it."

In the next place, proof of the handwriting of the subscribing witness is admissible evidence of the execution. It is stronger than that here, for the witness admits his signature.

In the last place, the circumstances of the negotiations impress me, to say the least, as pointing to the indorsement of the note by Mrs. Hood.

Assuming for the purposes of this appeal the statements of Matheson to be true, there was an agreement upon Mrs. Hood's part to settle the debt of her son to Matheson by paying cash $925.95, indorsing the Caribo note of $241.77, and taking from Matheson an assignment of the notes and mortgages of her son. It is admitted that she gave a check for the cash payment, which was signed exactly as the note appears to have been signed.

M. J. x Hood. Witness: J. M. Hood." It is also admitted
    mark

that the notes and mortgages were assigned and delivered by Matheson to her. The transaction was closed, as Matheson stated the agreement to have been, with the exception of the disputed indorsement. The notes and mortgages were left with Mrs. Hood, and Matheson took with him the check and the Caribo note.

The error in the direction of a verdict was fundamental: The conclusive limitation of the plaintiffs to the testimony of the subscribing witness; the denial of the right, notwithstanding the repudiation of the indorsement by the witness, to rely upon the other pregnant facts and circumstances of the case.

In *Northrop v. Lumber Co.,* 186 Fed. 770, 108 C. C. A. 640, it is said:

"Where the subscribing witnesses deny or forget their attestation, other evidence, direct or circumstantial, may of course, be resorted to to prove its execution."

Exactly in line with *Merck v. Merck, supra.* See also, *Patterson v. Tucker,* 9 N. J. Law. 322, 17 Am. Dec. 472, a particularly well-reasoned decision, which cites our own case of *Pearson v. Wightman,* 1 Mill, Const. 336, 12 Am. Dec. 636, and sums up the discussion in these words:

"The law prudently calls for the testimony of the witness, but is too wise and too conscious of human imperfection and fraility to rest its confidence, to limit its inquiry, and to conclude the rights of the parties solely by the recollection or forgetfulness, the integrity or waywardness of any witness."

Judgment reversed, and new trial granted.

Mr. Justice Fraser and Jno. P. Thomas, Jr., acting Associate Justice concur.

Mr. Justice Watts (dissenting) : This is an appeal from a directed verdict by his Honor, Judge Moore, in favor of the respondent McLaurin, as administrator of M. J. Hood, deceased; the issue being whether Mrs. M. J. Hood, respondent's intestate, indorsed the note sued on, the exception raises the issue that his Honor erred in not sending the case to the jury. The evidence of J. M. Hood, the witness to the note, M. J. Hood having made her mark, is that M. J. Hood did not indorse the note, and that the alleged indorsement was brought to the attention of M. J. Hood while he was present. There was no evidence to send the case to the jury that Mrs. Hood indorsed the note by making her mark, or that she knew anything about it. His Honor, in my opinion, committed no error, and exception should be overruled, and I think judgment should be affirmed.

Mr. Chief Justice Gary concurs.