SOUTHWEST BITULITHIC COMPANY V. GENARO MARTINEZ ET AL.

No. 7500. Decided September 25, 1940.
Rehearing overruled October 30, 1940.
(143 S. W., 2d Series, 116.)

*West & Hightower,* of Brownsville, *Moursund, Ball, Moursund & Bergstrom,* of San Antonio, for plaintiff in error.

The judgment of the trial court being one for a money demand, and defendant's appeal being from the entire judgment, and the Court of Civil Appeals having held that the money recoveries against defendants were proper and in rendering judgment sustained such recoveries, the plaintiff paving company was entitled to judgment upon the supersedeas bond and the judgment of the Court of Civil Appeals against the sureties on such bond was correct, and it was in error when it set said judgment aside on a motion for rehearing and refused to award a recovery against such sureties. Russell v. Deutschman, 100 S. W. 1164; A. C. Horn Co. of Texas v. Bonin, 23 S. W. (2d) 804.

*H. L. Faulk,* of Brownsville, for defendant in error.

The court of Civil Appeals was without authority to render judgment against the sureties on the supersedeas bond under the provisions of Article 1857, R. S. 1925. Schultze v. Dabney, 204 S. W. 342; Home Investment Co. v. Strange, 109 Texas 342, 207 S. W. 307; Wichita Falls Ranger & Ft. W. Ry. Co. v. Combs, 115 Texas 405, 283 S. W. 135.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the District Court of Cameron County by Southwest Bitulithic Company as plaintiff, and it will be so designated here. It was against Genaro Martinez and his wife Joaquina Martinez, who will be designated as defendants. The suit was to recover balance due on certain paving certificates issued by the City of Brownsville, and to foreclose two mechanics' liens alleged to have been executed by defendants November 2, 1927, and November 21, 1927, upon lots 7 and 8 in block 106 in the City of Brownsville.

The case was tried before the court without a jury. Judgment was rendered against Genaro Martinez personally for $728.40, and judgment for foreclosure was rendered against Genaro Martinez and his wife. Judgment upon the debt included $100 attorney's fees, but as to this no personal judgment was rendered against Joaquina Martinez, and no foreclosure was allowed.

The Court of Civil Appeals affirmed the judgment as to Genaro Martinez, but reversed and rendered judgment in favor of Joaquina Martinez as to the lien upon said lots, which were homestead property at the time of the execution of the alleged lien. 119 S. W. (2d) 740.

As we view the case, there is but one dominant question to be decided. Defendants filed no formal plea of forgery, but their answer was verified by the affidavit of Joaquin Martinez, and among other things contained the following:

"This defendant, Joaquina Martinez de Bejarano, now says that she is the wife of Genaro Martinez; that they have been lawfully married for many years, and at all times since their marriage have lived together as husband and wife, and for many years have lived together upon, used and occupied said premises as their homestead, and she now specificially denies that she ever at any time executed any contract or gave or consented to the giving, granting or creating of any lien upon said premises, and especially denies that she at any time executed any such contract giving, granting or creating any lien upon said premises as is alleged by plaintiff to be recorded in Vol. 17, page 157-59 and 513-14 of the Mechanic's Lien Records of Cameron County, Texas, and here now charges that if any such lien or contract appears to have been signed and acknowledged by her, that the same was done through fraud, accident or mistake on the part of the plaintiff, and without her knowledge, or that the same are forgeries."

The original mechanics' lien contract were offered in evidence, and were objected to by the defendants on the ground that no sufficient proof of the execution of same by Joaquina Martinez had been made. These contracts were admitted in evidence over such objections. It was within the power of the trial court to first hear proof as to the execution of these instruments, and if convinced that there was sufficient evidence to prima facie establish their execution, to admit them in evidence. The question of forgery then became an issue of fact, to be determined by the court, and upon this issue the court

has found in favor of plaintiff and against defendants. So the question of forgery has passed out of the case, if the court was not in error in allowing the instruments to be offered in evidence in the first instance. In our opinion there was ample evidence to sustain a conclusion on the part of the trial court that Joaquina Martinez executed these instruments.

Neither Genaro Martinez nor his wife could sign their names, and the instruments are executed by their marks. Antonio Martinez, a daughter of defendants, witnessed both instruments. It seems to be undoubted that she signed the name of both Genaro Martinez and his wife to the instrument on November 2, 1927, and signed the name of Joaquina Martinez to the instrument of November 21, 1927. Apparently the notary public signed the name of Genaro to this last mentioned instrument. On both instruments there appeared a cross mark supporting each substituted signature. The instrument of November 2, 1927, was also signed by Roy B. Mims as a witness. It was proven that Mims was dead at the time of the trial and that his signature to such instrument was genuine.

■ Assuming that the verified answer as set out above was sufficient to constitute an affidavit of forgery (which is extremely doubtful), so as to place the burden of proof upon plaintiff to show prima facie execution of these instruments, it is important to know just how that might have been done. It was not necessary to show that Antonio Martinez was authorized to sign the name of Joaquina Martinez to these instruments, as the Court of Civil Appeals has held. If that were necessary, probably such authority would have to be in writing. Nor was it possible to prove the handwriting of Joaquina Martinez, as she could not write. In such a case it was manifestly sufficient if it could be shown by facts and circumstances that Joaquina Martinez gave her assent to the contracts by declaring in the presence of the notary that the same were her act and deed, for the purposes and consideration therein expressed, or by showing that she manifested her asent to same, or adopted same, by making her mark or touching the pen. Mondragon v. Mondragon, 113 Texas 404, 257 S. W. 215.

There are two reasons at least why the action of the trial court in admitting these contracts in evidence may be upheld. In the first place, the signature of Roy B. Mims, deceased, witness to the instrument of November 2, 1927, was proven to be genuine. The signature of Antonio Martinez, a witness to both instruments, was admitted to be genuine. At common law, one of the favorite methods of proving the execution of a written

instrument was to prove the signature of the attesting witness, if he were dead or unavailable. In Wigmore on Evidence (2nd Ed.) sec. 1320, in speaking of the effect of proving the signature of a subscribing witness, it is said:

"What is it to prove his signature? It is in effect to offer in evidence the hearsay statement of the attester. The signing of a document in attestation by a witness, whether or not an express clause of attestation accompanies the signature, involves a statement by the attester that the person purporting to be the maker did then execute the document. This extra-judicial statement, expressed or implied, is always, when the attester is unavailable, admissible by exception to the Hearsay rule."

■ It is also a salutary rule, we think, that if the signature of a subscribing witness be shown to be genuine, the legal effect of the presence of such signature upon the document is not destroyed by the testimony of such witness that the maker in fact did not execute the instrument. There still remains a question of fact as to whether or not there was in reality an execution of the document. Matheson v. Caribo, 117 So. Car. 291, 109 S. E. 102, 17 A. L. R. 1263, and authorities cited. To hold otherwise would often place a party at the mercy of a subscribing witness, who by reason of relationship, defect of memory, or some other cause, denied the fact which the presence of his signature tended to establish.

In the next place, there are facts and circumstances sufficient to establish the conclusion that Joaquina Martinez actually appeared before the notary public as disclosed in his certificate. This being true, his certificate of acknowledgment was either conclusive, or at least was sufficient to raise an issue of fact as to the execution of the instrument. The statement of Joaquina Martinez that she did not execute these papers was not sufficient to destroy the probative force of the acknowledgements. Stewart v. Miller, 271 S. W. 311 (Writ Ref.) ; Texas Co. v. Keeter, 219 S. W. 521; Cockrell v. Griffith, 255 S. W. 490; Emmons v. Jones, 246 S. W. 1052.

In this connection we call attention to the fact that both instruments bore a joint acknowledgement signed by E. L. Kowalski, which acknowledgments were in due statutory form, and were accompanied by the official seal of the notary. It was admitted that the signature of Kowalski to these acknowledgments was genuine and that he was dead. It was further shown that he was a lawyer and a man of good reputation. There was also proof that he had taken something like 200

acknowledgments to similar contracts, a number of which had been involved in suits, and this was the first time any such instrument was claimed to be a forgery. In addition, Genaro Martinez admitted that he made his mark on the instruments, and his acknowledgment, which appeared to be joined with that of his wife, was not questioned. In fact the acknowledgment of Joaquina Martinez to these instruments was not attacked by specific allegations, and no allegation of any fraud or imposition on the part of the notary. The instruments had been recorded nearly ten years when the suit was filed, and payments had been made on the certificates for a number of years. Joaquina Martinez, after testifying that the notary was at her house at a time when she was milking a cow, was asked this question: "Was that the only time he was by your house?" to which she replied: "And the time my daughter signed when he went there so as to have my name and my husband's name on the paper."

We therefore are of the opinion that there was ample evidence to justify the trial court in admitting the instruments in evidence, and there was no abuse of discretion in doing so.

We reach this conslusion without taking into consideration the effect of Article 3723 of the Revised Statutes of 1925, which article has been ably discussed in the case of Thane v. Dallas Joint Stock Land Bank, 129 S. W. (2d) 795.

Defendants filed in this case a supersedeas bond. The Court of Civil Appeals, having reversed the trial court as to the foreclosure of lien, held that defendants had prosecuted their appeal with the effect to such extent that they and their sureties were not liable on the supersedeas bond. As we have reached the conclusion that the judgment of the Court of Civil Appeals in the respect mentioned is erroneous, and the judgment of the trial court should be affirmed, the supersedeas bond remains in full force and effect.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is in all things affirmed.

Opinion adopted by the Supreme Court September 25, 1940.

Rehearing overruled October 30, 1940.