**STATE v. WATTS et al.**

No. 9595.

Court of Civil Appeals of Texas.   Austin.

Nov. 6, 1946.

Rehearing Denied Nov. 13, 1946.

Grover Sellers, Atty. Gen., and Jack Ayer and Ocie Speer, Asst. Attys. Gen., for appellant.

Alto B. Cervin, of Dallas, Irving G. Mulitz and Frank F. Spata, both of Houston, McGown, McGown, Godfrey & Logan, by B. E. Godfrey and Harry L. Logan, Jr., all of Fort Worth, and Looney & Clark, Everett L. Looney, and Charles F. Herring, all of Austin, for appellees.

BAUGH, Justice.

This case grows out of the appeal in Watts v. Mann, Tex.Civ.App., 187 S.W.2d 917. In that case the appellants, thirty in number, who had been permanently enjoined by the trial court from violating what is popularly known as the Loan Shark Act, Vernon's Ann.Civ.St., Art. 4646b, Acts 48 Leg., Ch. 144, and pursuant to an order of the trial court fixing the amount thereof, filed a supersedeas bond in the sum of $2,500, with Standard Accident & Surety Company, as surety. The judgment of the trial court was affirmed by this court and writ of error refused by the Supreme Court. Upon return of the mandate to the trial court in that case, the appellants paid all of the costs. The State thereupon filed this suit against said appellants and the surety on their supersedeas bond to recover the full amount thereof against each of said principals and their surety. Trial was to the court without a jury and judgment rendered that the State take nothing; hence this appeal.

The bond sued upon was conditioned as provided in Rule 364, T.R.C.P., which rule, so far as applicable here, was taken from Art. 2270, R.C.S.1925. There being no money judgment, the amount was fixed by the trial judge, under Sec. (e) of said rule, in an amount sufficient to "secure the plaintiff in judgment in any *loss* or *damage* occasioned by the delay on appeal." (Emphasis added.) The State introduced only documentary evidence, including the application for said bond, the bond itself and the mandate from this court on the former appeal. The defendants introduced no evidence.

■ There is no controversy here as to the right of the appellants in said former suit to supersede that judgment; nor that its enforcement by the State was suspended during the appeal by the execution of said bond. All parties are likewise agreed that the obligation of such bond was one of indemnity only against loss; and not for a penalty. But the crux of the State's contention, variously asserted, is that the $2,500 principal of the bond should be construed as liquidated damages due the State, fixed in advance, for its "loss or damage occasioned" by the suspension of the State's right, during the pendency of said appeal, to enforce its injunction against the appellants in that case. It is the position of the State that in injunction cases, there being no money judgment, and no means whereby specific loss or damage can be proven, unless the amount fixed by the court be treated as liquidated damages, then the State would have no remedy and the statute and rule authorizing supersedeas in such cases would be ineffectual and a nullity. However that may be, the injunction proceeding was one expressly authorized and provided for in the Loan Shark Act. That Act did not make any special provisions for appeals thereunder. Being a civil action, appealable as such, the proceedings on appeal, including supersedeas, would be governed by the same rules applicable to other civil cases. Ex parte Kimbrough, 135 Tex. 624, 146 S.W. 2d 371; State v. Birdette, 139 Tex. 357, 162 S.W.2d 932. Consequently, the construction of supersedeas bonds in such cases must be governed by rules of construction of supersedeas bonds in other civil cases.

■ We think the terms "loss or damage" referred to in Rule 364, and as used in said bond, refer to monetary or material losses ascertainable by proof, either by the judgment itself, or, where that is not conclusive, by rules relating to proof of damages generally. Such terms do not contemplate injury to the dignity nor sovereignty of the State in the enforcement of its laws; nor to delays in such enforcement occasioned by following the legal processes prescribed for appeals in cases to which the State is a party. Nor is a supersedeas bond, though construed according to

canons applicable to the construction of contracts generally, comparable in all respects to a contract entered into voluntarily between individuals, wherein they undertake to estimate in advance actual damages as a result of breach, and state same as such in the contract. The terms of a supersedeas bond are prescribed by law as a part of the right of appeal; and, as has been repeatedly held, is intended only to indemnify the judgment holder against loss from delay. If he suffers no loss, then nothing is due him under the bond. It follows, therefore, that where the judgment holder claims loss or damage in a suit upon said bond, he must not only show that such appellant has failed to prosecute his appeal with success; but also show the extent of his damage or loss. Where the judgment is for a specific amount, then the judgment itself, together with court costs, constitute conclusive proof of extent of such damage, and the Court of Civil Appeals can and should render judgment on said bond. But that is not the only recourse of the judgment holder. He may by motion in the appellate court have such damages assessed, or sue subsequently, as here, on the bond. Jeffus v. Mullins, Tex. Civ.App., 78 S.W.2d 1023. Nor can the appellate court always determine the amount of the damage. And in cases where the supersedeas covers such items as rentals or foreclosure on personal property, the damages must be determined by proof of facts transpiring after judgment and during the pendency of the appeal.

Such bond is not an unconditional agreement to pay a stated sum of money; but imposes only a contingent or conditional liability, and its primary purpose is security. Prior to the adoption and promulgation of Rule 364, T.R.C.P. Art. 2270, R.C.S. required, in case of a monetary judgment, that such bond be "in a sum at least double the amount of the judgment, interest and costs * *. *." Obviously, in most cases, the loss or damage to the judgment holder in such case would not amount to the full principal of such bond. But it could not be argued that the judgment holder would be entitled to recover the amount of the principal of his bond as liquidated damages, when his damages were much less than that. In such cases, the law fixes the amount of the bond. In cases such as here presented, the court, as directed by law, not the parties, fixes the amount. And we see no more reason for holding that the principal fixed in such bond should be construed as liquidated damages in the one case than in the other.

The fact that proof of the amount of damages provable in the instant case is impracticable, if not impossible, does not alter the rule of construction. As stated by the Supreme Court in Ex Parte Kimbrough, 135 Tex. 624, 146 S.W.2d 371, 372, and by the Court of Civil Appeals in Antner v. State, Tex.Civ.App., 114 S.W.2d 640, the remedy for such a situation is with the Legislature. And, following the decision in the Kimbrough case, the Legislature did remedy such inadequacy, where injunctions are issued under the Texas Liquor Control Act, by providing that as a condition to superseding such injunction judgment, the appellant shall also file an additional penal bond in a sum not to exceed $500, subject to forfeiture if the appeal is not successful. See Vernon's Ann. P.C. Art. 666—29, Acts 1943, 48 Leg., p. 339, Ch. 221, Sec. 4. Thus there is legislative recognition in the Liquor Control Act of the very condition of which the State complains here; but the Legislature has not, as yet, sought to provide a remedy so far as the Loan Shark Act is concerned.

While this conclusion renders unnecessary a discussion of the other points of error made by the State; it is clear, we think, that its contention that the bond in question imposes a liability of $2,500 on each of the thirty makers thereof, or an aggregate total against the surety of $75,-000, is untenable. The bond does not so provide. While the State could have originally sued each of said thirty appellees separately and secured an injunction against each; it did not elect to do so. All joined in a single suit. It is true that the injunction in Watts v. Mann ran separately as to each of said parties. Likewise under said judgment any one or more of said parties, had they so desired, could have appealed separately. However, all of them

joined in a single appeal and supersedeas. It may be observed also that the primary objective of that suit in which all joined was by declaratory judgment to test the constitutionality of the Loan Shark Act. But all of said parties appealed jointly and jointly made the bond in question. It was but a single obligation carrying a maximum liability of $2,500. The surety company which provided the security did so for a minimum premium of $50, based upon a maximum liability of $2,500. If, as correctly urged by the State, such bond should be construed as any other contract, and the intention of the parties, if ascertainable, effectuated (Harrison v. Barngrover, Tex. Civ.App., 118 S.W.2d 415; 7 Tex.Jur., § 22, p. 82), be applied; it is clear that there being but a single joint appeal prosecuted by a joint bond, it was the intention of the makers and the surety to limit their aggregate liability to the only sum stated therein,—that is, to $2,500. Obviously such was the purpose and intent of the Surety Company.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.