**RESOLUTION TRUST CORPORATION as Receiver for Gill Savings Association, Appellant,**

v.

**CHAIR KING, INC., Appellee.**

**No. C14–91–00015–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 19, 1992.

Rehearing Denied April 23, 1992.

---

See also 797 S.W.2d 31.

Stephen G. Scholl, Jay N. Gross, Houston, for appellant.

Dennis G. Herlong, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an accelerated appeal from the granting of a temporary injunction prohibiting the return of money deposited into the registry of the court and ordering the payment of attorney's fees to Chair King, Inc. Resolution Trust Corporation ("RTC"), as receiver for Gill Savings Association ("Gill"), brings five points of error. Because we find no abuse of discretion by the trial court in granting the injunction, we affirm the trial court's judgment.

Chair King originally sued Gill for damages allegedly suffered as a result of wrongful eviction from retail space. The trial court rendered judgment for Chair King, awarding it $499,612.00 in damages,

$62,662.50 in attorney's fees at the trial level, $15,000.00 in attorney's fees for appeal to the court of appeals, $5000.00 for appeal to the supreme court, and an additional $5,000.00 if writ of error was granted. Before appealing this judgment, Gill deposited $671,216.78 into the registry of the court as a cash bond to supersede judgment. A panel of this court reversed the trial court's award of damage, reduced the amount of attorney's fees, and remanded the cause for retrial of damages. While the case was pending appeal at the supreme court, the RTC was appointed as receiver for Gill. The supreme court upheld the liability findings,[1] affirmed the attorney's fees awarded for the trial and remanded the cause solely for determination of damages, appellate attorney fees, and related bankruptcy attorney fees. In effect, the supreme court ruled that Gill was liable for damages and attorney's fees. The only question to be determined was how much. Chair King then sought and obtained a temporary injunction preventing the RTC from withdrawing the funds on deposit and directing the payment of those attorney's fees sustained by the supreme court.[2]

In point of error one, the RTC claims the trial court erred in granting the temporary injunction because Chair King introduced no evidence of imminent harm, irreparable injury, or lack of an adequate remedy at law. To warrant issuance of a temporary injunction, the applicant need only show a probable right of recovery and a probable injury if the injunction does not issue. *See State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Gettysburg Homeowners Ass'n, Inc. v. Olson,* 768 S.W.2d 369, 371 (Tex.App.—Houston

---

1. The supreme court sustained the ruling of this court upholding the liability findings but noted that they did not address Tex.R.App.P. 81(b)(1) because no one raised this issue in their briefs or on motion for rehearing. *Gill Sav. Ass'n v. Chair King, Inc.,* 797 S.W.2d 31, 32 n. 1 (Tex. 1990). Rule 81(b)(1) authorizes the reversal and remand of part of a judgment "provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested." Tex.R.App.P. 81(b)(1).

2. Retrial of the damages and attorney's fees occurred on September 3, 1991, and the trial court rendered judgment on the jury verdict awarding Chair King a total of $444,163.00 in actual damages, including attorney's fees. Although the trial court rendered judgment before we rendered our opinion regarding the injunction, the RTC continues to assert that the funds deposited to supersede the original judgment do not constitute security for the judgment on retrial.

[14th Dist.] 1989, no writ). When a trial court issues a temporary injunction, it is exercising its discretionary power to maintain the status quo, or the "last, actual, peaceable, non-contested status that preceded the pending controversy." *Southwestern Bell*, 526 S.W.2d at 528. On appeal, the only issue is whether the trial court committed a clear abuse of discretion. *Harris County v. Gordon*, 616 S.W.2d 167, 168 (Tex.1981). In reviewing the trial court's action, we draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *Hartwell's Office World, Inc. v. Systex Corp.*, 598 S.W.2d 636, 638 (Tex.Civ.App.— Houston [14th Dist.] 1980, writ ref'd n.r.e.).

In its order granting the temporary injunction, the trial court found that Chair King would probably prevail on the trial, that the district clerk would release the cash deposit before the trial court could render judgment, that this release of funds would alter the status quo, and that this release of funds would irreparably harm Chair King by leaving it without an adequate remedy at law to collect a judgment. Our review of the evidence indicates that Chair King has shown a probable right of recovery and probable injury.

■ In its application for the temporary injunction, Chair King asserted that the liability findings against Gill had been sustained on appeal and that it was seeking to preserve the status quo through retrial to determine the amount of damages and attorney's fees as mandated by the supreme court. Chair King further argued that Gill was insolvent and that, if the funds were released, Chair King would have no adequate remedy at law to collect a judgment for damages and attorney's fees. Chair King claimed that this release of funds would also cause it irreparable injury in that it could not collect damages from the insolvent savings institution. In support of this application, Chair King offered the opinions and judgments of this court and of the supreme court, a copy of the cash supersedeas deposit, and a certified copy of the order appointing the RTC as receiver for Gill.

Because the supreme court upheld the liability findings against Gill, the only issue remaining is the amount of damages and certain attorney's fees specified by the supreme court. We find the evidence sufficient to show that Chair King has a probable right to relief on the merits. Furthermore, we find that Chair King has shown probable injury if the injunction did not issue. If the court had released the funds on deposit, the insolvency of Gill would probably render it unable to respond in damages. Thus, we find that Chair King presented evidence of probable right and probable injury. We find no clear abuse of discretion by the trial court in granting the injunction. We overrule point one.

In point of error two, the RTC claims the trial court erred in granting the temporary injunction because it is an attachment prohibited by federal law. Under this point and in their reply brief, the RTC argues that, once a judgment is reversed on appeal and there is no judgment to supersede, the obligation to post a bond is discharged and the money deposited in lieu of a bond should be returned. In support of this argument, the RTC cites *Neeley v. Bankers Trust Co.*, 848 F.2d 658 (5th Cir.1988) and *AmWest Sav. Ass'n v. Farmers Market of Odessa, Inc.*, 753 F.Supp. 1339 (W.D.Tex.1990).

In *Neeley*, the trial court's judgment as to damages had been reversed and remanded for new trial. 848 F.2d at 659. Neeley, the plaintiff in the trial court, moved the court to stay release of the supersedeas bond posted by the defendants. *Id.* The trial court released the bond and denied Neeley's motion for reconsideration. *Id.* The Fifth Circuit accepted certification to address the issue "whether a surety remains bound on a supersedeas bond after the court remands for a new trial on damages." *Id.*

Because a bond is a contract in which the language is controlling, the court looked to the bond language providing for "the principals and surety to 'perform [the court of appeals'] judgment, sentence or decree, and pay all such damages as said Court may award against them.'" *Id.* Because this

language explicitly included only the obligation to pay the damages awarded by the court of appeals "judgment, sentence or decree," the court held that the bond was discharged where the appellate court had reversed the judgment for damages and remanded for a new trial. *Id. See also Aetna Cas. & Sur. Co. v. LaSalle Pump & Supply Co., Inc.,* 804 F.2d 315, 317–18 (5th Cir.1986) (appeal bond complying with statutory requirements covers judgment by trial court and any appellate court modification, but bond does not obligate surety where appellate court reverses original judgment and orders new trial, even if only for damages). *Cf. Scholz Homes, Inc. v. Larson,* 437 F.2d 1060, 1062 (7th Cir.1971) (held surety liable for affirmed as modified judgment of damages against one defendant, even though judgment as to other defendant was reversed).

TEX.R.APP.P. 47(a) provides for the suspension of execution of a judgment by the filing of a bond or making a deposit with the following condition:

> ... that the judgment debtor shall prosecute his appeal or writ of error with effect and, in case the judgment of the Supreme Court or court of appeals shall be against him, he shall perform its judgment, sentence or decree and pay all such damages and costs as said court may award against him.

TEX.R.APP.P. 47(a). Rule 48 states that a deposit of cash or a negotiable obligation may be filed in lieu of a surety bond, "conditioned in the same manner as would be a surety bond for the protection of other parties." TEX.R.APP.P. 48. The conditional language prescribed in Rule 47(a) protects a surety from unconditional liability. *See State v. Watts,* 197 S.W.2d 197, 199 (Tex. Civ.App.—Austin 1946, writ ref'd). By including this language in the bond, the surety agrees to pay an award of damages if that award is affirmed or affirmed as modified on appeal, but not if the judgment is reversed on appeal. *See Neeley,* 848 F.2d at 659–60; *LaSalle Pump,* 804 F.2d at 317–18; *Southwest Bitulithic Co. v. Martinez,* 135 Tex. 347, 143 S.W.2d 116 (1940) (*court of* appeals had reversed trial court judgment and held sureties not liable on

the supersedeas bond, but supreme court reinstated trial court judgment and held supersedeas bond remained in effect).

◼ Thus, case law clearly holds that, under the explicit language in a supersedeas bond, a surety is not liable where the judgment awarding damages is reversed on appeal. We must, on the other hand, determine whether a deposit of cash by the losing party in lieu of filing a supersedeas bond remains in effect to secure a judgment that has been reversed as to damages only even though the deposit was made without the conditional language prescribed by Rule 47(a). The only case authority located that addresses this situation is *AmWest Sav. Ass'n v. Farmers Market of Odessa, Inc.,* 753 F.Supp. 1339 (W.D.Tex.1990).

◼ In *AmWest,* a judgment debtor deposited negotiable securities, in lieu of a supersedeas bond, with the trial court clerk. *Id.* at 1341. On appeal, the El Paso state appellate court reversed the judgment and remanded the case for a new trial. *Id.* After filing application for writ of error to the Texas Supreme Court, the FDIC succeeded the FSLIC as receiver for the judgment debtor. *Id.* at 1342. The case was then removed to federal district court and the FDIC moved for summary judgment on four grounds, including the ground that dismissal was warranted because the assets of the judgment debtor were insufficient to pay secured creditors and the reversal by the appellate court rendered the judgment creditors unsecured. *Id.* The district court agreed, citing *Aetna Cas. & Sur. Co. v. LaSalle Pump & Supply Co., Inc.,* 804 F.2d at 317 and *Neeley,* 848 F.2d at 659. *Id.* at 1344. Although the courts in *LaSalle Pump* and *Neeley* relied on the explicit language in the bonds to find the surety's obligation discharged upon reversal of the original judgment, the *AmWest* court held that the negotiable securities deposited must be released even though the depositor apparently did not include any bond language limiting the deposit to the judgment on appeal. *Id.*

■ By holding that an unconditional supersedeas deposit of negotiable securities must be released if the judgment is reversed on appeal, the *AmWest* court had to find that supersedeas deposits implicitly contain the same condition that supersedeas bonds must explicitly include under Tex. R.App.P. 47(a). This holding effectively nullifies the necessity of the Rule 48 directive to condition a supersedeas deposit in the same manner as a bond. We decline to apply the reasoning of *AmWest* to this case which on its appellate history is distinguishable from *AmWest* in that the appellate court in *AmWest* remanded the entire case as to both liability and damages for a new trial. Here only the damages were remanded for a new trial. We hold that under these rare circumstances where the appellant becomes insolvent during the appeal, and the appellate court affirms its liability, with only the *amount* of damages and certain attorney's fees to be determined on retrial, appellant's supersedeas cash deposit can be legally retained pending the retrial to protect the injured party. To hold otherwise would render the Rule 48 requirement of conditional language meaningless. Accordingly, we hold that the deposit remains effective even though the portion of the judgment relating to damages was reversed and remanded for new trial.

We find this interpretation consistent with the apparent rationale behind the language found in Rule 48 which conditions the cash deposit "for the protection of other parties" as would be done in a surety bond. Under the facts of this case, there are no "other parties" except for the appellees. There are no sureties to protect and to release this cash asset posted to protect the prevailing party under these circumstances would punish the prudent litigant who properly pursued his claim at law.

In point of error two, the RTC also claims the trial court erred in granting the temporary injunction because it is an attachment prohibited by federal law. In point of error four, the RTC claims the trial court's grant of the temporary injunction violated the Supremacy Clause of the United States Constitution in that the injunction undermines the mandatory federal system for processing claims against financial institutions in receivership. Because Congress has adopted a comprehensive system for the processing and payment of claims against a financial institution, the RTC argues that the Supremacy Clause mandates that this federal plan take precedence over any state proceedings. The RTC claims that the temporary injunction is "an attempt to subvert the federally mandated claims procedure" by allowing Chair King to take preference over other creditors of Gill.

■ Federal law prohibits the attachment or execution "by any court upon assets in the possession of the receiver." 12 U.S.C.A. § 1821(d)(13)(C) (1989). The statutory purpose of § 1821(d)(13)(C) is to prevent the preferential treatment of certain creditors by court action. *See United States v. Federal Deposit Ins. Corp.*, 881 F.2d 207, 210 (5th Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990). Because the RTC is a receiver, the RTC claims that it holds Gill's right, title, and interest in the funds on deposit. Thus, the RTC argues that the trial court's refusal to release the funds constitutes the functional equivalent of an attachment intended to give Chair King preferential treatment.

■ Chair King argues that § 1821(d)(13)(C) is inapplicable because the funds on deposit are not "assets in the possession of the receiver." We agree. When a judgment debtor deposits funds in the registry of the court, the funds cease to be assets of the judgment debtor. *See Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 273 (5th Cir.1989). The RTC became the receiver long after these funds were deposited. Thus, at the time the RTC became involved in this case, these funds were not assets in Gill's possession. *See id.; Grubb v. Federal Deposit Ins. Corp.*, 833 F.2d 222, 226 (10th Cir. 1987). Because these funds are not "assets in the possession of the receiver," § 1821(d)(13)(C) is inapplicable. Furthermore, the federal law governing processing

and payment of claims of insolvent financial institutions relate to assets in the possession of the institution. If the federal laws are inapplicable to the funds on deposit, then the grant of the injunction in this case could not violate the Supremacy Clause. We overrule points two and four.

■■■ In point of error three, RTC contends that Texas law prohibits injunctions against a financial institution prior to final judgment. In 1989, the Texas legislature enacted a provision precluding enforcement of an attachment, injunction, or execution against a financial institution "unless there is a final judgment in the proceeding in which the attachment, injunction, or execution is issued." TEX.REV.CIV.STAT.ANN. art. 342–609, § 1 (Vernon Supp.1991). This article defines a final judgment as one in which "all appeals have been exhausted or foreclosed by law." *Id.* at § 2. Under this definition, there is no final judgment in the instant case. No case law has construed this statute.

Chair King argues that art. 342–609 is inapplicable because (1) the statute intends to prohibit creditors from taking assets in the possession of the financial institution and here, the assets are in the possession of the district clerk; (2) the injunction is not mandatory, causing the financial institution to forfeit assets, but is only prohibitory, restraining the RTC from taking action; and (3) alternatively, the injunction actually operates against the district clerk, restraining him or her from releasing the funds on deposit.

Unlike the federal law prohibiting attachments upon assets in the possession of the receiver, 12 U.S.C.A. § 1821(d)(13)(C), the Texas statute does not explicitly require that the assets be in the possession of the financial institution or receiver. The Texas statute simply precludes enforcement of an injunction against a financial institution prior to final judgment. *See* TEX.REV.CIV. STAT.ANN. art. 342–609, § 1 (Vernon Supp. 1991). Although the trial court's order granting the temporary injunction states that it restrains the RTC from attempting to *obtain* possession of the funds, it primarily restrains the district clerk from releasing the funds. Art. 342–609 does not apply to injunctions against district clerks. Thus, we find that the injunction does not violate art. 342–609 and we overrule point three.

In point of error five, the RTC claims the trial court erred in enjoining the RTC from withdrawing the cash bond because federal law exempts the RTC from posting a bond in this case. The RTC argues, without authority, that by granting the injunction the trial court has in effect required the RTC to post a bond, a requirement prohibited by 12 U.S.C.A. § 1821(d)(13)(C). The funds were deposited by Gill and have never been assets in Gill's possession while the RTC has acted as receiver. Thus, the RTC has not posted a bond or deposited funds in violation of § 1821(d)(13)(C). We overrule point five.

We affirm the judgment of the trial court.

SEARS, Justice, concurring.

I concur in the result. However, I would find that *AmWest Sav. Ass'n v. Farmers Market of Odessa, Inc.,* 753 F.Supp. 1339 (W.D.Tex.1990) is inapposite to this appeal. In *AmWest,* the appellate court reversed the entire judgment of the trial court and remanded it for a new trial. Since there was no judgment, there was no need for a bond or cash. Further, that case was resolved in federal court and resulted, at least in part, from a finding of insufficient funds to pay secured creditors. If the appellant herein had a remedy, that remedy would have been an application in federal court to recover a preferential payment made to an unliquidated judgment creditor at the expense of the secured creditors. 12 U.S.C.A. § 91.

I decline to follow the reasoning of the appellant and of the dissenting opinion for the reason that a cash deposit may be made in a trial court to *satisfy* a judgment, even though part of that judgment is on appeal, and is not necessarily intended to merely supersede the judgment. In the latter, the caselaw has developed in a distinct and clear direction in the logical pursuit of protection for a *third party non-litigant* who is merely surety on a supersedeas bond.

The surety *contractually* agrees to act in that capacity *only* for the duration of the appeal. There is no intent, and in fact there is no contractual language, to bind the surety for a longer period of time. Another important distinction is that a surety bond is only an obligation to pay conditioned upon the language of the contract, while a cash deposit is an asset that has been deposited into the registry of the court which the court can treat differently due to the absence of the contractual limitations of a bond. Case law, which was developed for the protection of a *third party* who contractually agrees to act as surety on a bond, for the sole purpose of *superseding* a judgment, should not be applied with equal force and effect to a party who deposits cash in temporary *satisfaction* of a judgment. If the appellee did not want the trial court to exercise control over the cash, it could have deposited the cash with a surety as collateral and have the surety issue a supersedeas bond.

I also disagree with the dissenting opinion analysis of *Wheeler v. Pavlic,* 290 S.W.2d 754 (Tex.Civ.App.—Beaumont 1956, no writ). In *Wheeler,* as in the other cases cited in the dissenting opinion, the court was dealing with a *third party surety* who had provided a supersedeas bond, or cash in *Wheeler,* for the sole purpose of superseding judgment pending appeal. In fact, the *Wheeler* court found that: "the money was originally deposited only for the purpose of perfecting Ms. Hudiburgh's appeal and of superseding the judgment that had been rendered against her...." *Id.* at 757. It should be noted that the judgment was reversed and rendered; therefore, there was no judgment against which that cash could have been applied. In this appeal, there is very clearly a judgment for liability and for attorney fees, and the cause was remanded to the trial court to determine the amount of damages.

The dissenting opinion also discusses two cases out of the Tyler court of appeals to support the position that a cash deposit is the same as a security bond.[1] In both of

those cases, there was no writ history, and in both cases the judgment of the trial court was affirmed. In one case, the judgment was affirmed by the court of appeals, and in the second case the appellant dismissed the appeal. In both instances the cash was then used to satisfy the judgment.

The dissenting opinion also takes the position that since the appellant won the appeal, the bond or cash in lieu thereof should be returned. Again, the *liability* of the appellant was affirmed and only the damage issue was reversed and remanded for a new trial to determine the appropriate measure of damages. If we follow the action proposed by the dissenting opinion, the monies would be released to RTC and the appellee would have no cash to satisfy that portion of the judgment that is final. If we accepted that rationale, the appellee would have no way to satisfy the judgment even though cash had been deposited for that purpose. Such a result would not be equitable or just.

The sole function of a temporary injunction is to preserve the status quo pending a final determination on the merits. *Bryant v. Barnes,* 438 S.W.2d 435 (Tex.Civ.App.— Waco 1968, writ ref'd n.r.e.). At the hearing on the request for a temporary injunction, the trial court found that appellee would probably prevail in the trial of the damage issue and further that appellant would withdraw the cash on deposit before the court could enter judgment for appellee. The trial court issued the temporary injunction because of the "probable inequity" and "irreparable harm" to appellee. The court found that unless the injunction was granted the appellant would, "tend to make ineffectual a judgment rendered in favor of plaintiff [appellee]," and "it would be deprived of its ability to collect on the damages which this court may award." Clearly, the court acted to prevent an inequity and to preserve the status quo.

---

1. *Mea v. Mea,* 464 S.W.2d 201 (Tex.Civ.App.— Tyler 1971, no writ), and *Robertson v. Land,* 519 S.W.2d 227 (Tex.Civ.App.—Tyler 1975, no writ).

Since 1902, Texas courts have consistently held that temporary injunctions expire when a final judgment is rendered. *Riggins v. Thompson*, 96 Tex. 154, 71 S.W. 14 (1902). When a court of appeals has been notified that a final judgment has been entered, they "have no jurisdiction to review the interlocutory order, the temporary injunction appeal having become moot. *Id.* at 435, citing *International Ass'n of Machinists v. Federal Ass'n of Accessory Workers*, 133 Tex. 624, 130 S.W.2d 282 (1939). *See also Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953). While many of the cases involve an ultimate denial of a permanent injunction, it appears clear that the temporary injunction is automatically dissolved by entry of a final judgment.

The temporary injunction made the basis of this appeal was granted December 6, 1990, and enjoined the District Clerk from releasing the cash placed in the registry of the court "until further written order of this court...."

Following a jury trial on the remanded issue of damages, the trial court entered a Final Judgment that appellee recover actual damages from appellant in the amount of $444,163.00, attorney fees in the amount of $112,625.00, $84,762.00 in pre-judgment interest, and $20,000.00 attorney fees in the event of appeals as well as an additional $10,000.00 in the event of writ of error to the Supreme Court. The order further stated "all relief not granted herein is denied." Appellant has also filed an appeal in this court from the Final Judgment of the trial court.

Because the temporary injunction made the basis of this appeal has been rendered moot by the entry of final judgment, this court is without jurisdiction to hear the appeal and it should be dismissed. Appellant has appealed from a temporary injunction. The terms of the injunction have expired, and that portion of the judgment that was reversed and remanded for a new trial has been tried and a new judgment has been rendered. The trial court had entered the temporary injunction to preserve its own jurisdiction over the cash

deposit pending retrial of the damage issues and to preserve status quo. The damage issues have been retried and a judgment has been rendered against Gill Savings. Therefore, the temporary injunction is moot and the appeal thereon should also be moot.

ROBERTSON, Justice, dissenting.

Believing that the majority misconstrues the purpose and effect of cash deposited in lieu of a supersedeas bond, I respectfully dissent.

The only requirement of a supersedeas bond, other than being "good and sufficient," being made payable to the judgment creditor in the required amount and being approved by the clerk, is that it be "conditioned that the judgment debtor shall prosecute his appeal or writ of error *with effect* and, in case the judgment [on appeal] shall be against him, he shall perform its judgment ... and pay all such damages and costs as said court may award against him." Tex.R.App.P. 47(a).

Where an appellant prosecutes his appeal with effect, there can be no judgment on the supersedeas bond. *Martinez v. Southwest Bitulithic Co.*, 119 S.W.2d 740, 742 (Tex.Civ.App.—San Antonio 1938), *rev'd on other grounds*, 135 Tex. 347, 143 S.W.2d 116 (1940). If the appellant has been successful in setting aside a part of the judgment, even though the amount of the judgment remains the same, the rule remains the same. *Id.* It follows without question that since Gill Savings secured a reversal of a portion of the adverse judgment on appeal, the appeal was prosecuted with effect and there was no liability on the supersedeas bond. The majority apparently agrees with these principles and further apparently agrees that had a supersedeas *bond* instead of *cash in lieu of bond* been filed, the trial court could not have ordered the cash (guaranteed by the bond) deposited into the registry of the court. (See opinion, p. 550).

However, the majority states that a different rule applies where cash is deposited in lieu of the filing of a supersedeas bond. The majority reaches this conclusion by

holding that to apply the same rule to the deposit of cash instead of a written supersedeas bond "would render the Rule 48 requirement of conditional language meaningless." (opinion, p. 551).

Rule 48, TEX.R.APP.P., merely provides that in lieu of filing a bond, the party may deposit cash or certain negotiable securities "in the amount fixed for the surety bond, *conditioned in the same manner as would be a surety bond for the protection of other parties.*" Rule 48 does not provide for any other or different conditions than those required by Rule 47 for a written bond.

In both *Mea v. Mea,* 464 S.W.2d 201 (Tex.Civ.App.—Tyler 1971, no writ) and *Robertson v. Land,* 519 S.W.2d 227 (Tex. Civ.App.—Tyler 1975, no writ), the Tyler court stated that there was not any good or logical reason for the intent and purposes of the supersedeas bond to be altered in any way by a deposit of cash in lieu of the bond and, accordingly held that "the same principles and rules of law would apply had these appellants filed a supersedeas bond rather than cash in lieu of the bond." The majority errs in refusing to follow *Am-West,* a federal district court opinion cited and distinguished in the majority opinion, and these Texas appellate court opinions.

In another case very similar to this one, the Beaumont court reached a conclusion consistent with this dissent. *Wheeler v. Pavlic,* 290 S.W.2d 754 (Beaumont 1956, writ ref'd n.r.e.). There, a personal injury and damage suit had been previously instituted by Pavlic against two persons: Hudiburgh, the owner of the automobile involved in the accident and Adams, the driver. The insurance carrier for Hudiburgh assumed responsibility for defending the suit. Pavlic recovered judgment against both Adams and Hudiburgh, and both defendants appealed. Adam's appeal was on an affidavit of inability to pay costs and, in lieu of an appeal and supersedeas bond, the insurance carrier, on behalf of Hudiburgh, deposited cash with the clerk. The appellate court affirmed the judgment as to Adams but reversed and rendered the judgment as to Hudiburgh. After mandate issued, the trial court clerk did not immediately issue process as required by then Rule 369, TEX.R.CIV.PROC. (now Rule 87(a) TEX.R.APP.P.).

While the funds were still on deposit with the district clerk, the insurance carrier was placed in receivership. Thereafter, Pavlic filed suit against the receiver; the receiver demanded a return of the cash that had been deposited in lieu of supersedeas, but the demand was refused. The trial court rendered judgment for Pavlic and ordered the clerk to pay the judgment from the cash on deposit (that which had been deposited in lieu supersedeas bond). On appeal the receiver argued that the trial court erred in ordering the money released to Pavlic. The court agreed, stating, as it relates to the issue here presented:

> Furthermore, we are of the opinion that the trial court exceeded its authority and committed error in ordering the money applied to the payment of the judgment in the case at bar. The money was originally deposited only for the purpose of perfecting Mrs. Hudiburgh's appeal and of superseding the judgment that had been rendered against her, and when the judgment against her was reversed and rendered and had become final and the mandate had been returned to the trial court, appellant became entitled to have the money released and paid over.

290 S.W.2d at 757. The fact that the judgment was there reversed and rendered, but here only reversed in part, is of no consequence because in both cases the appeal was prosecuted "with effect."

The trial court further erred in ordering the money deposited into the registry of the court because Chair King has no enforceable right to the money on deposit. *Miller v. First State Bank,* 551 S.W.2d 89, 102 (Tex.Civ.App.—Fort Worth, 1977), *aff'd as modified* [on another point], 563 S.W.2d 572 (Tex.1978). Once the purpose of the cash deposited in lieu of supersedeas bond had served its purpose (prosecution of the appeal with effect) it should have been returned to the depositor. The trial court has unquestionably abused its discretion

and the judgment should therefore be reversed and rendered.