AIG RISK MANAGEMENT, INC., National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Birmingham Fire Insurance Company of Pennsylvania, and David Battard, Appellants,

v.

MOTEL 6 OPERATING L.P., Individually and Successor In Interest To Motel 6, Inc., Appellee.

No. 13–97–268–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 11, 1997.

Rehearing Overruled Jan. 29, 1998.

302

Paul W. Nye, Douglas E. Chaves, Audrey
Mullert Vicknair, Roberta Dohse, Chaves,
Gonzales & Hoblit, Corpus Christi, Eduardo
R. Rodriguez, Alison Kennamer, Paul Y.
Cunningham, III, Rodriguez, Colvin & Cha-

ney, Brownsville, Martin B. McNamara, John R. Crews, C. Glenn Morris, Gibson, Dunn & Crutcher, Dallas, for appellants.

Ricardo R. Godinez, Jarvis & Kittleman, McAllen, Werner A. Powers, Charles C. Keeble, Jr., Haynes & Boone, Daniel Trevor Mabery, Dallas, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal from the grant of a temporary injunction against appellants, AIG Risk Management, Inc., National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Birmingham Fire Insurance Company of Pennsylvania, and David Battard (collectively, "AIG"). By eight points of error, appellants challenge the validity of the injunction. Because we hold that the trial court did not abuse its discretion in granting the temporary injunction, we affirm the trial court's order.

### I. BACKGROUND

In 1986, 1994, and 1995, AIG, an insurance company, proposed insurance programs for the Motel 6 chain designed to satisfy the company's desire to self-insure. Unlike traditional "guaranteed cost" policies where a policyholder pays fixed premiums, premiums for self-insurance programs are based on actuarial projections of the company's anticipated losses during the policy period. In addition to an "Indemnity Agreement," Motel 6, the policyholder, paid certain expenses up front and provided AIG, the insurer, with a promissory note or "promise to pay addendum" in an amount equal to the actuarially projected losses. As anticipated losses realized exceeded program deductibles, reimbursement to AIG was to be paid out of a fund established by Motel 6, collateralized by a letter of credit. Premiums, the promissory note, and the letter of credit were to be periodically adjusted based upon actual loss development.

The three programs had certain elements in common. For each policy year, 1986, 1994, and 1995, actuarial projections were prepared and letters of credit issued to collateralize the forecast losses. Extended negotiations over the terms of the agreements never resulted in final, executed agreements although some terms were apparently achieved.

In 1986, AIG submitted invoices to Motel 6 for losses and expenses, a number of which Motel 6 disputed and refused to pay. Motel 6 changed insurers in 1987.

In 1994, AIG proposed a new insurance program to Motel 6, which Motel 6 accepted. AIG served Motel 6's insurance needs from mid–1994 until mid–1996. At some point, negotiations began concerning the amount AIG claimed Motel 6 owed for billings connected with the 1986 program. Motel 6 insisted it only owed $84,000, while AIG contended Motel 6 owed more than $800,000. Talks continued through the middle of 1996, with little apparent progress. When Motel 6 informed AIG that it had decided to take its insurance business elsewhere, AIG drew over $1 million on the 1994 letter of credit to pay the 1986 debt. Part of the money was later returned, but AIG retained more than $800,-000.

Motel 6 then filed suit against AIG. Motel 6 alleged that AIG had committed fraud, constructive fraud, negligent misrepresentation, breach of contract, unjust enrichment, conversion, tortious interference with a business relationship, and business disparagement. Motel 6 also sought a temporary injunction to prevent AIG from drawing on any letters of credit for any of the three programs. On April 25, 1997, the trial court granted a temporary injunction which states, in relevant part, as follows:

> It is, therefore, ORDERED, ADJUDGED AND DECREED that the Corporate Defendants ... are hereby enjoined until judgment in this case is entered by this Court from drawing upon:
>
> (1) any letter of credit issued for the account of Motel 6 to secure its obligations under the 1994 or 1995 insurance programs for any debt or obligation which is due or allegedly due under the 1986 insurance program;

(2) any letter of credit issued for the account of Motel 6 to secure its obligations under the 1986 or 1994 insurance programs for any debt or obligation which is due or allegedly due under the 1995 insurance program; and

(3) any letter of credit issued for the account of Motel 6 to secure its obligations under the 1986 or 1995 insurance programs for any debt or obligation which is due or allegedly due under the 1994 insurance program.

It is, further ORDERED, ADJUDGED AND DECREED that the Corporate Defendants ... are hereby enjoined from drawing upon any letter of credit issued for the account of Motel 6 without first giving Motel 6, through their counsel of record in this case, sixty (60) days advance, written notice of their intention to take such action, which notice must contain full and complete backup documentation demonstrating how the amounts due or allegedly due were determined.

AIG appeals from the grant of this temporary injunction.

## II. STANDARD OF REVIEW

■ The appeal of an order granting a temporary injunction is an appeal from an interlocutory order; therefore, the merits of the moving party's case are not presented for appellate review. *Davis v. Huey*, 571 S.W.2d 859, 861 (Tex.1978); *Philipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd). At a hearing on an application for a temporary injunction, the only issue before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending a trial on the merits. *Davis*, 571 S.W.2d at 862; *Philipp Bros.*, 709 S.W.2d at 265.

■ The scope of our review is limited to determining whether the trial judge committed a clear abuse of discretion. *Davis*, 571 S.W.2d at 861–62; *Simon Property Group (Texas) L.P. v. May Dept. Stores Co.*, 943 S.W.2d 64, 66 (Tex.App.—Corpus Christi 1997, n.w.h.). We consider (1) whether the trial court could reasonably have reached only one decision, and (2) whether the trial court's decision was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917–18 (Tex.1985). Only the propriety of the trial court's grant of injunctive relief is addressed, not the merits of the suit. *Simon Prop. Group*, 943 S.W.2d at 74. Abuse of discretion does not exist if the trial court heard conflicting evidence, and substantive, probative evidence appears in the record that reasonably supports the trial court's decision. *Davis*, 571 S.W.2d at 862; *CRC–Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 852 (Tex.App.—Dallas 1990, no writ).

## III. INJUNCTIONS AND LETTERS OF CREDIT

By their first two points of error, appellants complain that the trial court erred in granting the temporary injunction because it did not find the requirements set out in section 5.114(b) of the Texas Business and Commerce Code.

Section 5.114(b) sets out three situations when a court may enjoin payment under a letter of credit:

(1) when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform; or

(2) when documents appear on their face to comply with the terms of a credit but a required document is in fact forged; or

(3) when there is fraud in the transaction.

*See* TEX. BUS. & COM.CODE ANN. § 5.114(b) (Vernon 1994).

Motel 6 alleged that AIG committed fraud and fraud in the transaction. In the temporary injunction order, the trial court stated:

The Court does not reach the issue of whether there has been "fraud in the transaction" with [sic] the meaning of TEXAS BUSINESS AND COMMERCE CODE § 5.114(b)(2).

The temporary injunction order requires that AIG provide sixty days' notice to Motel

6 that it intends to present a letter of credit for payment. In addition, the trial court's order prohibits AIG (1) from drawing on either the 1994 or 1995 letters of credit to cover any claimed obligations for 1986, (2) from drawing on either the 1986 or 1994 letters of credit to cover any claimed obligations for 1995, or (3) from drawing on either the 1986 or 1995 letters of credit to cover any claimed obligations for 1994.

The temporary injunction order does not enjoin AIG from presenting the letters of credit for payment. It does not prohibit AIG from drawing on the 1986 letter of credit to cover obligations for the 1986 program; it does not prohibit AIG from drawing on the 1994 letter of credit to cover obligations for the 1994 program; and it does not prohibit AIG from drawing on the 1995 letter of credit to cover obligations for the 1995 program.

■ Because the trial court has not enjoined AIG from presenting the letters of credit for payment, we hold that section 5.114 does not apply. Accordingly, we overrule appellants' first and second points of error.

Appellants' third point of error is related to the first and second points of error. Appellants contend that the trial court reached the merits of the contractual dispute without deciding the issue of fraud in the transaction, thereby violating the requirements of section 5.114(b).

The trial court found that Motel 6 had established a probable right of recovery because AIG had breached its fiduciary duty to Motel 6. AIG does not argue that this finding was improper, only that the trial court could not make such a finding without first determining whether there was fraud in the transaction. Because we have held that section 5.114 does not apply in this case, we conclude that a finding of fraud in the transaction was not required.

AIG raises two additional complaints in its argument under this point. First, AIG contends it was error for the trial court to effectively decide that the agreements between AIG and Motel 6 do not contain a cross-collateralization provision and to prevent appellants from drawing upon the 1994 letter of credit for 1995 obligations. Secondly, AIG contends that there is a contractual dispute concerning whether any notice is required before it draws on a letter of credit. These issues, AIG argues, are matters to be decided by the fact finder.

We agree that these are fact questions. However, we disagree with AIG's perception of the effect of the injunction. As we have already pointed out, the injunction does not enjoin AIG from presenting the letters of credit for payment, unless AIG seeks to draw on a letter of credit for one program to pay a bill arising under another program.

AIG argues that this limitation is a finding that the agreements between AIG and Motel 6 do not contain cross-collateralization provisions. We disagree. It is undisputed that each letter of credit was intended to cover all obligations incurred under its related program and the injunction does not impair that agreement. The injunction simply will not allow draws for other purposes until a fact finder determines whether it is permissible under the contracts.

Also, the notice requirement does not function as a determination that the contract contains such a requirement. It serves to prevent additional disputes erupting from "surprise" draws such as the one at issue in this case. Accordingly, we overrule appellants' third point of error.

### IV. COMMON LAW PRINCIPLES AND INJUNCTIVE RELIEF

■ By its fourth, fifth, sixth, and seventh points of error, AIG contends that Motel 6 failed to show it was entitled to injunctive relief under the common law. For a temporary injunction to issue, the movant must plead and prove (1) a probable right of recovery, (2) that imminent, irreparable harm will occur in the interim should the injunction be denied, and (3) that no adequate remedy at law exists. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968); *Simon Prop. Group*, 943 S.W.2d at 70; *Haq v. America's Favorite Chicken Co.*, 921 S.W.2d 728, 730 (Tex.App.—Corpus Christi 1996, writ dism'd w.o.j.). AIG contends that Motel 6 did not satisfactorily establish any of these elements.

### A. Probable Right of Recovery

The trial court determined that Motel 6 established a probable right of recovery because the fiduciary relationship between AIG and Motel 6 had been breached. AIG contends that the evidence is insufficient, as a matter of law, to establish the existence of a fiduciary relationship.

■ Motel 6 claimed that a fiduciary relationship existed because AIG and Motel 6 were partners. The relationship between partners gives rise to a fiduciary duty as a matter of law. *See Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 787 (1938). The party asserting the existence of a partnership relationship must establish the following elements: (1) a community of interest in the venture; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right of control or management of the enterprise. *Ayco Dev. Corp. v. G.E.T. Serv. Co.,* 616 S.W.2d 184, 186 (Tex.1981) (joint venture); *Coastal Plains Dev. Corp.* v. Micrea, Inc., 572 S.W.2d 285, 287 (Tex.1978) (joint venture); *Stephanz v. Laird,* 846 S.W.2d 895, 900 (Tex.App.—Houston [1st Dist.] 1993, no writ) (partnership). If any one of these elements is not shown, no partnership exists. *Ayco Dev. Corp.,* 616 S.W.2d at 186; *Stephanz,* 846 S.W.2d at 900.

■ Motel 6 proved that AIG offered to enter into a partnership relationship, but it did not establish that its relationship with AIG was a true, legal partnership. To show the alleged "partnership," Motel 6 relied heavily on a letter from Gary Hightower, AIG's vice-president, offering to work with Motel 6 in "partnership" to help Motel 6 reach its risk management objectives. A plain reading of the letter reveals that the word "partnership" is not used in a context suggesting the formation of a legal partnership. Instead, it is used to emphasize AIG's willingness and interest in working cooperatively with its clients. The only other evidence concerning the alleged "partnership" came from Tom Lusk, vice-president of Motel 6's risk management department, who testified that AIG had represented "they would be very flexible in approaching our problems, concerns, issues." Because Motel 6 did not establish the elements of a partnership, we conclude that the trial court could not find that (1) AIG and Motel 6 were partners, and (2) AIG breached the fiduciary duty of a partner.

■ No findings of facts or conclusions of law were requested or filed in this case. Where no findings of facts or conclusions of law are filed or requested, the judgment of the trial court implies all necessary findings of facts in support thereof. *In the Interest of W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984). Where implied findings of facts are supported by the evidence, it is the duty of the appellate court to uphold the judgment on any theory of law applicable to the case. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex. 1977). This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Gulf Land Co. v. Atlantic Ref. Co.,* 134 Tex. 59, 131 S.W.2d 73, 84 (1939); *Polk v. Braddock,* 864 S.W.2d 78, 79 (Tex.App.—Dallas 1992, no writ) (even though a trial court gives an incorrect reason for its judgment, court of appeals must affirm if the judgment may be upheld on any legal theory); *Lerma v. Ramon,* 760 S.W.2d 727, 730 (Tex.App.—Corpus Christi 1988, no writ).

■ Even though a letter of credit is legally a separate contract from the other agreements comprising a transaction,[1] it is functionally related to them. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 381 (Tex.1985); *Republic Nat. Bank of Dallas v. Northwest Nat. Bank of Fort Worth,* 578 S.W.2d 109, 116 (Tex.1978). The independence of a letter of credit con-

---

1. The first contract is the agreement between parties to the underlying obligation; typically, the contract between the obligor and obligee. The second contract is ordinarily between the bank or other person (the issuer) and the obligor (the account party), which precipitates the issuance of the letter of credit. The third contract, or the letter of credit, is between the issuer and the obligee (the beneficiary), which provides that the issuer will make payment to the beneficiary upon presentation of a draft and certain documents (a documentary draft) or simply upon presentation of a draft (a clean letter). *Republic Nat. Bank of Dallas v. Northwest Nat. Bank of Fort Worth,* 578 S.W.2d 109, 112 (Tex.1978).

tract relates to the obligation of the issuing bank to pay a beneficiary's draft, an obligation unaffected by disputes concerning the underlying contract. *Republic Nat. Bank,* 578 S.W.2d at 114.

The instant case does not involve the issuer's obligation nor whether the issuer acted properly in honoring AIG's draft. The question is whether AIG acted wrongfully in drawing on the letter of credit to recover an alleged debt. It is impossible to tell solely from the letter of credit whether Motel 6 owed AIG for services rendered. The letter of credit is silent as to what services were to be performed and how payment was to be rendered. It is, therefore, necessary to look at the underlying agreement.

Reviewing the underlying agreement does not violate the independence principle, which requires that the terms of a letter of credit alone control whether payment is to be made. *Sun Marine Terminals, Inc. v. Artoc Bank & Trust, Ltd.,* 797 S.W.2d 7, 11–12 (Tex. 1990). Because payment in this case has already been made, the letter of credit has served its purpose. The question remaining is whether AIG obtained payment under false pretenses, and to answer that question, we must look at the agreement between AIG and Motel 6.

AIG claims that the terms of the 1994 and 1995 programs permitted it to recover the amounts allegedly due under the 1986 program. We will leave the issue—whether the agreements allow such action—for the fact finder.

■ AIG did not contend that under Texas law it was entitled to resort to self-help to settle the dispute. After reviewing the record, we find that it contains no documentation in support of AIG's claims to the $800,000 it drew, and no evidence that Motel 6 was actually indebted for this or any amount under the 1986 program. On its face, the draw appears to be without legal basis. In addition, the record reflects that AIG gave Motel 6 no warning that it intended to draw the funds and unilaterally settle the dispute, and that Motel 6 did not consent to the action. Cf. *Sebastian v. Cheney,* 86 Tex. 497, 25 S.W. 691, 691 (1894) (creditor who retained funds from sale of debtor's property produced evidence debtor owed him more than amount retained, that he had tried and failed to secure a settlement with debtor, and retained money for purpose of partially settling debt with debtor's knowledge and consent). Because the record does not support AIG's claims to the funds drawn, we conclude that Motel 6 has a probable right to recover the monies.

### B. *Imminent Harm and Irreparable Injury*

AIG next contends that Motel 6 did not demonstrate a danger of imminent harm and irreparable injury. The trial court found that the threat arose from AIG's ability to draw large sums of money on Motel 6's letter of credit without notice. Such action, the court found, would alter the status quo and could irreparably damage Motel 6's business reputation and creditworthiness.

AIG informed the trial court that it would not make another draw to pay 1986 program debts, because the 1986 program was "essentially" closed. The record reflects, however, that some unresolved debts remain unpaid. Although AIG has offered, in writing, not to draw upon any letter of credit without notice to Motel 6, there is no evidence Motel 6 accepted the offer. Furthermore, the offer does not encompass a promise not to draw upon a letter of credit for debts unrelated to the underlying program for that letter. It is undisputed that AIG still has access to Motel 6's letters of credit (worth a total of $11 million), continues to draw on them, and has the potential to draw millions of dollars.

■ AIG has not promised to limit its draws to the directly related programs and letters, nor has it promised not to close out the remaining disputed debts from the 1986 program without Motel 6's consent or agreement. Also, AIG effectively claims entitlement under a purported cross-collateralization clause in the contracts to draw on any letter of credit it chooses to cover debts under any of the three programs. If the clause is not effective, the legality of AIG's draws on letters of credit issued for programs other than the one the debt is related to become questionable, at least. Although

AIG has not threatened to make any further "cross-collateral" draws, the fact that the objectionable activity is capable of continuing is enough to support a finding of imminent harm, notwithstanding a promise to cease the activity. *State v. Texas Pet Foods,* 591 S.W.2d 800, 804, 805 (Tex.1979).

Motel 6 premised its claims of irreparable harm on the damage to its credit worthiness and business reputation that could result from continued unwarranted draws. Testimony indicated that AIG's $800,000 draw on the letter of credit has already begun to harm Motel 6.

According to Joe Reyes, an experienced casualty broker with Johnson & Higgins, a commercial insurance brokerage firm, the risk management community in Dallas is small and word "gets around." Actions, such as those taken by AIG, generate concern about a business's reputability, and even though no one directly told him they harbored uncertainties about doing business with Motel 6, Reyes indicated that negative inferences had been made. Reyes opined that seizure of a client's letters of credit affects the client's reputability and carriers do not want to offer coverage thereafter because "it's just not good business." Although he admitted that he had never encountered such a situation before, Reyes stated that he has a lot of experience and is capable of gauging the effects that can follow a heavy draw on collateral.

Tom Lusk, Motel 6's vice-president of risk management, explained that a draw on a letter of credit indicates that a company is not paying its bills. Such a draw negatively impacts a business's reputation. According to Lusk, Motel 6 tries to be "pretty fair about" paying its bills, and the draw suggests that Motel 6 cannot or will not pay its bills.

■ Irreparable harm may be proven by showing that damages cannot be measured by any certain pecuniary standard. *Haq,* 921 S.W.2d at 730. It is clear that if a business is perceived as being unreliable in paying its bills, necessitating resort to collateral, others will be wary of dealing with that business and its good reputation will be diminished. Although neither witness stated that another draw would heighten negative perceptions of Motel 6, evidence that the previous draw had such impact logically infers that if AIG repeats its action, Motel 6's reputation will decline further. We conclude that the evidence satisfactorily establishes a probability of imminent harm leading to irreparable injury.

### C. *No Adequate Remedy at Law*

■ For purposes of injunctive relief, no adequate remedy at law exists if damages are incapable of calculation. *Haq,* 921 S.W.2d at 730. Although it may be possible to determine what dollar amount Motel 6 could recover for the draw on its letter of credit, an injured reputation cannot be readily restored with money. *See Waite Hill Serv., Inc. v. World Class Metal Works, Inc.,* 935 S.W.2d 197, 201 (Tex.App.—Fort Worth 1996, no writ) (noting damages compensate for harm but may not wholly restore injured party). Accordingly, we overrule appellant's fourth, fifth, sixth, and seventh points of error.

### V. MAINTAINING THE STATUS QUO

By its eighth point of error, AIG contends that the temporary injunction alters, rather than maintains, the status quo. AIG argues that the trial court "essentially [rewrote] the contracts entered into by Motel 6 and [AIG]" and imposed "special restrictions" on rights created by the contracts. AIG's complaints focus on disputes concerning (1) whether a notice requirement was agreed to by the parties and (2) the purported cross-collateralization clause.

■ The status quo to be preserved by a temporary injunction is the last, actual, peaceable, uncontested status that preceded the controversy. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Simon Prop. Group,* 943 S.W.2d at 70. After reviewing the record before us, we conclude that the temporary injunction serves that purpose. The record reflects a dispute between the parties concerning whether notice is required before a draw is made. We do not see the trial court's order as a determination by the court that the contract requires notice before a draw is made. We conclude

that the order only seeks to avoid the escalation of the present conflict.

In the underlying dispute, Motel 6 complained of a lack of documentation to justify the amounts AIG alleged Motel 6 owed. By requiring that AIG provide written notice and supporting documentation for future withdrawals during the pendency of this suit, the trial court has stopped the escalation of the dispute so that the parties can deal peaceably together. The question—whether such notice will be required in the future in accordance with the contracts—is left to the fact finder to decide.

As we previously discussed in point three, the existence of the cross-collateralization provision is a matter for the fact finder to determine. Until then, AIG may not exercise disputed "rights." As the parties did not dispute the relationship between particular program years and the particular letters of credit set up for each program year, the court's order left those intact. Appellant's eighth point of error is overruled.

We hold that the trial court did not abuse its discretion in granting the temporary injunction. We affirm the trial court's order.