**Richard HOTZE, Appellant,**

v.

**The Honorable Lee P. BROWN and the City of Houston, Appellees & Cross–Appellants,**

v.

**Rob Todd, Cross–Appellee.**

No. 14–98–00394–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 9, 1999.

Michael D. Weiss, Douglas John Schlachter, Houston, for appellants.

Bertrand L. Pourteau, Judy K. Hatfield, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices MAURICE E. AMIDEI and LEE.*

## MAJORITY OPINION ON REHEARING

PAUL C. MURPHY, Chief Justice.

We withdraw the original opinion issued June 24, 1999, in this cause and substitute the following opinion in its place.

City of Houston Mayor Lee Brown (Brown) signed an executive order prohibiting discrimination based on sexual orientation. Richard Hotze (Hotze) and City Councilman Rob Todd (Todd) sued Brown and the City of Houston (the City), asking the court to declare the order invalid and preclude its enforcement by temporary and permanent injunction. Brown and the City filed a motion to dismiss claiming Hotze and Todd had no standing. The court found Hotze had no standing and

---

\* Senior Justice Norman Lee sitting by assignment.

granted Todd's application for a temporary injunction. By interlocutory appeal, Hotze challenges the dismissal based on lack of standing, and Brown and the City cross-appeal the denial of the motion as to Todd. We affirm.

## Background

In 1985, the City of Houston held a referendum regarding a proposed ordinance prohibiting discrimination based on sexual orientation. Hotze was instrumental in organizing a campaign to defeat the ordinance, and he voted against it in the referendum. A majority of voters rejected the ordinance, and it did not go into effect.

In 1998, Brown signed an executive order, EO 1–8, prohibiting discrimination based on sexual orientation. The order expressly applies to all city activities and employees, including civil service employees. Adherence to the order is mandatory, and it contains disciplinary measures.[1]

The City of Houston charter states that the civil service commission, with the approval of the city council, shall make rules and regulations for the conduct of its business and employees. *See* HOUSTON, TEX., HOUSTON CODE, art. V-a, §§ 2, 4. The rules and regulations for its employees must include provisions necessary to prohibit discrimination. *See id.* art. V-a, § 4. The

---

1. The pertinent provisions of EO 1–8 are:
   1. PURPOSE
      The purpose of this Executive Order is to prohibit discrimination or retaliation on the basis of sexual orientation and to provide in all city programs and in all related activity equal employment and economic opportunity at every level of municipal government without regard to sexual orientation. It is further the city's policy to provide each city's employee a work environment free of discrimination and harassment based on sexual orientation. "Sexual orientation" as used in this Executive Order refers to the actual or perceived status of a person with respect to his or her sexuality.
   2. OBJECTIVES
      This Executive Order applies to all city activities, including but not limited to those relating to (1) all aspects of employment such as recruitment, appointment, compensation, promotion, discipline, demotion, transfers, layoff, recall, termination, and training opportunities; (2) all aspects of economic opportunity such as contracting and vending; (3) availability of city facilities; (4) provision of city services; and (4) all city interactions with the public.
   . . . .
   5. DUTIES OF CITY EMPLOYEES
      1) "City employee" as used in this Executive Order shall include all employees who work for the city, whether civil service protected in any system, contract, grant or exempt under Art. V-a, Sec. 2 of the Charter including appointive officials, city attorneys and their professional staff, and part-time, temporary, emergency or executive level workers.
      2) City employees in the performance of their employment related duties and assignments shall not discriminate or retali-

ate against any other employee or against any member of the public because of an individual's actual or perceived sexual orientation.
      3) All city employees shall have an affirmative duty to report, in writing, any violation of this Executive order to his/her supervisor or manager *and* to the OIG.
   6. COMPLIANCE
      1) It shall be a violation of this Executive Order for an employee to fail, or refuse, to hire, recruit, appoint, promote or train any individual because of such individual's sexual orientation; or to limit, segregate or classify employees or applicants in any way which would deprive, or tend to deprive, any individual of equal opportunity or otherwise adversely affect the status of the employee or applicant because of such individual's sexual orientation.
      2) It shall be a violation of this Executive Order for an employee to fail or refuse to recommend any contract or purchase for award, based upon any contractor or vendor's sexual orientation; or to fail to make available to any member of the public who would otherwise be entitled to use of a city facility or receipt of a city service based upon the member of the public's sexual orientation; or to limit, based upon an individual's sexual orientation, participation by any city employee or member of the public in any city-sponsored activity in which the individual would otherwise be permitted to participate.
   Adherence to this Executive Order is mandatory. Violation of this Executive Order will subject a city employee to disciplinary action, up to and including indefinite suspension/termination.

city council, however, is vested with all legislative powers of the city, subject to the terms of the charter. *See id.* art. VII, § 10. It may change or amend any commission rule. *See id.* art V-a, § 2. No provision precludes the city council from enacting rules for civil service employees or requires it to obtain civil service commission approval of rules and ordinances it promulgates.[2]

The mayor, on the other hand, enforces laws and ordinances. *See id.* art. VI, § 7a. He can, however, prescribe rules "necessary and expedient" for the general conduct of the administrative department. *See id.*

Hotze and Todd contend that these provisions of the charter establish that, by implementing a major policy change expressly applicable to civil service employees, Brown bypassed the citizens of Houston who voted against the referendum and usurped a power allocated to the city council and the civil service commission.

### Jurisdiction to Hear Hotze's Appeal

In the absence of a statute authorizing jurisdiction, appellate courts do not have jurisdiction to hear appeals from interlocutory orders. *See Jani–King, Inc. v. Yates,* 965 S.W.2d 665, 666 (Tex.App.—Houston [14 th Dist.] 1998, no pet.); *Gleason v. Coman,* 693 S.W.2d 564, 565 (Tex. App.—Houston [14 th Dist.] 1985, writ ref'd n.r.e.). An appellate court commits fundamental error if it exercises jurisdiction over an interlocutory appeal without statutory authority. *See Jani–King,* 965 S.W.2d at 666. Hotze contends we have jurisdiction under section 51.014(a)(4) of the Texas Civil Practices and Remedies Code, which allows an appeal from an interlocutory order granting or refusing a temporary injunction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon

1997). He argues that, since the court's order dismissed him for lack of standing, it effectively denied the temporary injunction, thus bringing his appeal within section 51.014(a)(4).

In *General Electric Co. v. Marvel Rare Metals,* the United States Supreme Court considered a similar argument. 287 U.S. 430, 432–33, 53 S.Ct. 202, 77 L.Ed. 408 (1932). The defendant's counter-claim sought an injunction against a patent infringement, which the plaintiff successfully moved to dismiss for lack of jurisdiction. The defendants appealed, and the plaintiff moved to dismiss the appeal because the trial court's dismissal did not amount to the refusal of an injunction under the federal statute, allowing an appeal from an interlocutory order when "an injunction is granted, continued, modified, refused, or dissolved by an interlocutory order or decree...." *Id.* at 431–32, 53 S.Ct. 202 (quoting 28 U.S.C. § 227). The Court rejected the plaintiff's argument, stating, "the [trial] court necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction. It cannot be said ... that the dismissal did not deny to the defendants the protection of the injunction prayed in their answer." *Id.* at 433, 53 S.Ct. 202. Accordingly, it found the appellate court had jurisdiction to review the dismissal. *See id.*

Here, it is undisputed that Hotze did not get the protection he desired because the court found he did not have standing to proceed. By dismissing him, the court effectively denied his motion for a temporary and permanent injunction. Moreover, we note that if we find we lack jurisdiction to hear Hotze's interlocutory appeal, he could not appeal the matter of his standing until after the court renders a final judgment determining the propriety

---

**2.** Although the charter arguably gives city council the power to prescribe non-discrimination rules for non-civil service employees, Hotze and Todd focus on the applicability of EO 1–8 to civil service employees, since its application to that group purportedly usurps the city council's and commission's exclusive right to promulgate civil service employee rules.

of the permanent injunction. At that point, of course, the issue of Hotze's standing would be moot. Consequently, Hotze is without a remedy unless we exercise jurisdiction. Accordingly, we assert jurisdiction under section 51.014(a)(4) to consider Hotze's standing.

## Hotze Lacks Standing

■ A plaintiff may not maintain an action unless he has standing to litigate the matters made the basis of the lawsuit. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984); *Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 89 (Tex.App.—Houston [14 th Dist.] 1997, pet. denied). "Standing" is "some interest peculiar to a person individually and not as a member of the general public." *Bass*, 664 S.W.2d at 324. A person has standing if (1) he has sustained or is in immediate danger of sustaining a direct injury as a result of the wrongful act of which he complains; (2) there is a direct relationship between the alleged injury and the claim sought to be adjudicated; (3) he has a personal stake in the outcome of the case; (4) the challenged action has caused him some injury in fact; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own interest. *See Marburger*, 957 S.W.2d at 89. A plaintiff does not establish a justiciable interest if his complaint fails to show that the subject matter of the litigation affects him differently than other citizens. *See Hunt*, 664 S.W.2d at 324. We review the trial court's determination of standing as we review any issue of subject matter jurisdiction, by construing the pleadings in favor of the plaintiff and considering the plaintiff's intent. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

■ In his first, second, and third points of error, Hotze contends he had standing because (1) he voted in the 1985 election, (2) he formed an organization and worked to defeat the ordinance, (3) he is a taxpayer; and (4) Brown violated the City Charter VIIb- § 3. Except for the second basis, all of these allegations are injuries which do not affect Hotze differently than other members of the general public. First, while Brown's actions arguably nullified Hotze's 1985 vote, Brown's actions do not have a unique affect on Hotze; all citizens who voted against the referendum suffer the same injury, if any.[3] Likewise, if Brown acted beyond his power and violated the City Charter in attempting to unilaterally implement a major policy change, the effect on Hotze is the same as the affect on any Houstonian. Further, he cannot have standing as a taxpayer because, although Hotze's petition stated that he "wishes to enjoin the City from spending its resources on enforcing the executive order [and] binding itself to void contracts and ultra vires acts," his pleadings do not allege that he suffered any special injury or that he has been or will be injured other than as a member of the general public.[4] *See Galveston County Beach Park Bd. v. Johnson*, 822 S.W.2d 828, 830 (Tex.App.—Houston [14 th Dist.]

---

**3.** Hotze cites *Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), and *McCaffrey v. Gartley*, 377 A.2d 1367 (Me. 1977), as support for the proposition that the loss of a right to vote confers standing. Hotze does not dispute, however, that he voted in the 1985 election. Hence, he was not denied his right to vote, as were the plaintiffs in the cited cases. Rather, he alleges he lost the effectiveness of that vote. Again, the lost effectiveness of his vote is no different an injury than that which is suffered by every other voter who voted against the 1985 ordinance.

**4.** Further, Hotze offers no authority for his proposition that Brown's actions violated article IX, sec. 1, of the Houston Code, which gives taxpayers standing to sue. This section allows any property taxpayer "to restrain the execution of any illegal, unauthorized or fraudulent contract or agreement ..., to restrain any disbursing officer ... from paying any illegal, unauthorized or fraudulent bills, claims or demand ... or any salaries or compensation to any person in its administrative service whose appointment has not been made pursuant to the provisions of the law...." HOUSTON, TEX., HOUSTON CODE, art. IX, § 1.

1992), *writ denied*, 848 S.W.2d 689 (Tex. 1993) (per curiam) (holding that a person seeking to enjoin the actions of a governmental body must plead and prove that he has been damaged and injured other than as a member of the general public).

In his motion for rehearing, Hotze argues that a recent Texas Supreme Court decision mandates that we reverse the trial court. In July, the court decided *Blum v. Lanier*, 997 S.W.2d 259 (Tex.1999). In that case, Edward Blum and over 20,000 Houston citizens signed a petition proposing to amend the city charter to end preferential treatment in employment and contracting. *See id.* at 260. The proposed charter amendment specifically stated that "[t]he City of Houston shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment and public contracting." *Id.* However, the city council's ordinance calling for a special election provided the following: "Shall the Charter of the City of Houston be amended to end the use of Affirmative Action for women and minorities in the operation of City of Houston employment and contracting, including ending the current program and any similar programs in the future?" *Id.* at 261. Blum sought an injunction directing the City of Houston to use the proposed charter amendment language, but the trial court found it had no jurisdiction to enjoin the election. Blum appealed to this court, and we held that Blum had no standing to enjoin the City. *Id.* Specifically, we held that Blum's involvement did not distinguish him in any way from the general public. *Id.* at (our opinion not yet released).

On appeal to the supreme court, the City of Houston reiterated its position that Blum's status as signatory to the petition is not by itself sufficient to give him a justiciable interest in the controversy. In its opinion, the court cited *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 649 (Tex.

1951), which stated, "When the people exercise their rights and powers under initiative provisions of a city charter they are acting as and become in fact the legislative branch of the municipal government." *Id.* at 649. *Glass* was based on facts similar to *Blum*, as the *Glass* plaintiffs were signatories to an initiative petition seeking to compel the City to call and hold an election. *Id.* at 647. *Glass* was not, however, a standing case; rather, it involved a writ of mandamus, and the supreme court held that plaintiffs had a right to demand that an election be held because the City had no right to refuse to hold an election once the requisite steps for proposing an ordinance were followed. *Id.* at 654, 244 S.W.2d 645. Nonetheless, the supreme court in *Blum* quoted the above language as support for its conclusion that "those qualified voters who sign [a petition proposing to amend the City charter] have a justiciable interest in the valid execution of the charter amendment election and as such have an interest in that election distinct from that of the general public." 997 S.W.2d at 262 (citations omitted). It held that a qualified voter who signs an initiative petition has standing to seek an injunction forbidding the City's use of a misleading ballot proposition. *Id.*

*Blum* and *Glass* are obviously distinguishable from the case at bar, as in both of those cases and unlike in the present case, the plaintiffs were asserting that the city was obligated to hold an election, Edward Blum specifically asserting it should be held employing the language offered in the petition. *See id.* at 261; *Glass*, 244 S.W.2d at 647. In the present case, an election was indeed sought but duly held fourteen years ago. There is no valid execution of the election to be held, nor is there a "misleading ballot proposition" at issue, so the holding in *Blum* does not apply. Hotze contends this court should extend *Blum* such that voters who sign a petition and actually have the opportunity to participate in the desired election have a justiciable interest in the validity of that

election 14 years hence. To so hold would extend the very narrow holding of *Blum*, and we decline to do so. We also note that *Blum* and *Glass* involved governmental entities which refused to carry out ministerial duties. In *Blum*, once the proposed charter amendment was submitted pursuant to the Local Government Code, the City of Houston had a ministerial duty to identify the measure by language which is not misleading. *Blum*, 997 S.W.2d at 262. In *Glass*, once the plaintiffs abided by the requirements of the Austin city charter, the city council had a ministerial duty to carry out the initiative procedure. *See Glass*, 244 S.W.2d at 653. In the present case, there can be no doubt that the City of Houston had a ministerial duty in 1985 to hold an election regarding the proposed ordinance. Nor can there be any doubt, in light of *Blum*, that the City of Houston had a ministerial duty in 1984 to identify the proposed ordinance in language which would not mislead the voters. Whether or not Brown had a right to initiate EO 1–8 is not, of course, before us, but it cannot be said that once the 1984 referendum was held, Brown had a ministerial duty to never enter executive orders regarding the subject matter of the 1985 referendum or to forever after desist from broaching the subject of sexual orientation-based discrimination. We conclude that *Blum* does not compel that we reverse the trial court's finding that Hotze lacked standing to seek an injunction.

▪ Hotze also asserts standing as an organizer of the campaign to defeat the referendum, citing *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176 (9th Cir.1988). In *Soules*, the appellants claimed they had a legally cognizable injury to contest the authorization of a privately funded special election because they opposed an initiative which was the subject of the special election. *See id.* at 1179. The court agreed, holding that the appellants incurred extraordinary campaign expenditures and therefore had a distinct and palpable injury which was a sufficient basis for standing. *Id.*

*Soules* is distinguishable because Hotze does not contend that his involvement in the 1985 effort to defeat the referendum involved extraordinary campaign expenditures; to the contrary, he complains only that he expended "time and effort." Certainly, this is not a palpable injury. Furthermore, although Hotze's petition states that he desires to preserve the time and effort he spent on the campaign, he does not explain how Brown's actions caused him an injury peculiar to himself.

We overrule Hotze's first, second, and third points of error.

In his fourth point of error, Hotze asserts standing because Brown's issuance of EO 1–8 voided his 1985 referendum vote; however, Hotze then limits his argument to the merits of whether Brown has the power to pass a rule previously rejected in a referendum. He cites a number of cases from other jurisdictions as support for the proposition that Brown does not have such power; however, none of these cases address whether someone in Hotze's position has standing to sue under those circumstances. *See, e.g., Jackson v. Denver Producing*, 96 F.2d 457, 460 (10th Cir.1938); *In re Megnella*, 133 Minn. 98, 157 N.W. 991 (1916); *Yakima v. Huza*, 67 Wash.2d 351, 407 P.2d 815, 822 (1965). Further, as noted above, Brown's actions in allegedly voiding Hotze's vote do not affect Hotze differently than they affected any other citizen who voted against the 1985 ordinance. We overrule Hotze's fourth point of error.

### Brown's and the City's First Cross–Point

*Standing*

▪ In their first cross point, Brown and the City contend the trial court erred in refusing to dismiss Todd's claims for want of jurisdiction because Todd has no justiciable interest in EO 1–8 and, consequently, no standing to bring this suit.

Todd asserts standing on a number of theories, all of which concern his position as a lawmaker: (1) Brown's action denied him the right to participate in the decision-making process in an area in which he has exclusive jurisdiction; (2) the policy would put the council in perpetual conflict with the mayor; and (3) Brown's action nullified Todd's vote. The propriety of lawmaker standing is an issue of first impression in Texas; consequently, we look to our sister states and the federal courts for instruction.

Cases considering lawmaker standing generally fall into three categories: lost political battles, dilution of vote, and usurpation of power. In both state and federal courts, many plaintiffs have sought standing after voting against a law but failing in their efforts to defeat it. These circumstances do not suffice to confer standing. For example, in *Raines v. Byrd*, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), six congressmen sued the secretary of the treasury and the director of the office of management and budget, alleging the Line Item Veto Act was unconstitutional. *Id.* at 2315. All the plaintiffs voted against the bill, but it passed both houses and became law.[5] *See id.* The Supreme Court found the plaintiffs did not have standing, because losing a vote does not amount to a sufficient personal stake in a dispute. *See id.* at 2320. Similarly, in *Korioth v. Briscoe*, 523 F.2d 1271 (5th Cir.1975), a legislator who cast a minority vote against enacting a statute brought suit to declare the statute unconstitutional. *Id.* at 1277–78. The Fifth Circuit found that falling on the losing side of the vote did not impede his legislative power, and thus he had no standing to sue. *See id.* at 1278. State courts are in accord. *See, e.g., Braude v. City of Los Angeles*, 226 Cal.App.3d 83, 92, 276 Cal.Rptr. 256 (Cal. Ct.App.1990); *Dodak v. State Admin. Bd.*, 441 Mich. 547, 495 N.W.2d 539, 546 (1993).

The second category of cases arises when a lawmaker voted on an issue and subsequent acts nullified or lessened the significance of his vote. Courts generally find standing based on this argument. For example, in *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), twenty state senators cast votes against a resolution, and twenty voted in favor of it. *Id.* at 435–36, 59 S.Ct. 972. The lieutenant governor, who presided over the senate, cast the deciding vote in favor of the resolution, and the house of representatives voted to adopt it. *See id.* at 436, 59 S.Ct. 972. The plaintiffs, including the twenty senators who voted against the resolution, challenged the lieutenant governor's right to determine the outcome of the senate vote. *Id.* Addressing the senators' standing, the Court stated that their "votes against ratification have been overridden and virtually held for naught although if they are right in their contentions their votes would have been sufficient to defeat ratification." *Id.* at 438, 59 S.Ct. 972. The Court found they had an interest in maintaining the effectiveness of their votes and thus had standing. *See id.; see also Rogers v. Brockette*, 588 F.2d 1057, 1060 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979). In *Hendrick v. Walters*, 865 P.2d 1232 (Okla. 1993), a senator sued to determine whether the governor, who did not take an authorized oath, was validly holding office. *Id.* at 1235, 1240. The court noted the various ways the governor and senate interact and found vote dilution because, if the governor was improperly holding office, the senator's approval of the governor's appointments and votes to override his vetoes would be pointless. *See id.* at 1238. Thus, the court determined the senator had standing. *Id.*

In the third group of cases, courts have found standing when lawmakers allege certain acts usurped their power. In *Council of the City of Newark v. James,*

---

5. The United States Supreme Court has since declared this act unconstitutional. *See Clin-* *ton v. City of New York*, 524 U.S. 417, 118 S.Ct. 2091, 2108, 141 L.Ed.2d 393 (1998).

232 N.J.Super. 449, 557 A.2d 683 (1989), the mayor chose which city-owned property would be offered for public sale and delineated the conditions of sale. *Id.* at 685. The city council argued that choosing this property was within its statutory duties and responsibilities, and the mayor's actions usurped their duty. Based on this interest, the court found the city council had standing to sue the mayor. *Id.* In *Colorado General Assembly v. Lamm,* 700 P.2d 508 (Colo.1985), the Colorado General Assembly sued the governor, who previously authorized the transfer of money to various accounts despite the assembly's exclusive appropriations power. *Id.* at 510–12. The court found this injury was sufficient to satisfy standing requirements. *See id.* at 516. In a similar case, members of the Michigan legislature sued several state officials and the State Administrative Board, which attempted to transfer funds within various departments. *See Dodak,* 495 N.W.2d at 541–42. One plaintiff, the chair of the house appropriations committee, had a right as the chair to approve or disapprove intradepartmental transfers. *Id.* at 545. The court noted that the board's actions would deprive him of his right to participate in the legislative process, and therefore, it found he had standing. *See id.*[6]

Returning to Todd's standing allegations, we find he can establish standing based on his allegation that Brown's action usurped his power as a council member to make employment rules. Presuming, as we must, that the City Council has exclusive authority to promulgate non-discrimination rules, Todd, as a member of that council, has an interest peculiar to himself different than that of the general public, which cannot directly enact such rules. As such, Todd has standing.

*Capacity*

Although Todd has standing, we must also consider whether he has capacity to bring this suit. "Capacity" is the legal authority to bring a suit and is an issue distinct from standing. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996); *Graves v. Diehl,* 958 S.W.2d 468, 470 n. 2 (Tex.App.—Houston [14 th Dist.] 1997, no pet.). A person has capacity when he has the legal authority to prosecute or defend an action. *See Graves,* 958 S.W.2d at 470 n. 2. The circumstances affecting capacity to sue include, but are not limited to, infancy, assumed names, alienage, insanity, executor status, and status as a corporate plaintiff. *See, e.g., Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983) (infancy); *Estate of C.M. v. S.G.,* 937 S.W.2d 8, 10 (Tex.App.—Houston [14 th Dist.] 1996, no writ) (executor status); *Continental Contractors, Inc. v. Thorup,* 578 S.W.2d 864, 866 (Tex.App.—Houston [1 st Dist.] 1979, no writ) (assumed name); *Janak v. Security Lumber Co., Inc.,* 513 S.W.2d 300, 301 (Tex.App.—Houston [1 st Dist.] 1974, no writ) (mental incompetency); 1 TEX. JUR. *Actions* § 156 (1993). Significantly, capacity concerns whether a person or entity can file *any* lawsuit, not a specific one.

Todd is not disabled by any circumstance listed above, and Brown and the City do not contend that he is; rather, they assert Todd cannot act on behalf of the council. This argument, however, pertains not to whether Todd can bring any lawsuit but rather whether he can bring this one. As such, its contention is germane to standing, not capacity. *See, e.g., Pankhurst v. Weitinger & Tucker,* 850 S.W.2d 726, 729 (Tex.App.—Corpus Christi 1993, writ denied) (stating that, for a party to have standing, he must show an interest in the litigation, either in his own right or as a representative). Further,

---

**6.** The court also found that an appropriations committee member who did not have the right to vote on the transfers at issue did not have standing. He sued in connection with one transfer which was put before the committee and approved, despite his vote to reject it. As he was simply on the losing side of a vote, he did not have standing to challenge the transfer. *See id.*

Todd does not specifically allege that he sues on behalf of the city council; rather, he asserts his rights as a member of that council. As an individual city council member, he certainly has legal authority to file or defend a lawsuit. *See, e.g., Texas Appellate Practice & Educ. Resource Ctr. v. Patterson,* 902 S.W.2d 686 (Tex.App.— Austin 1995, writ denied); *Garza v. Garcia,* 785 S.W.2d 421 (Tex.App.—Corpus Christi 1990, writ denied). Thus, Todd has capacity to sue for the usurpation of his power as a councilman.

We overrule Brown's and the City's first cross-point.

### Brown's and the City's Second Cross-Point

██ In their second cross-point, Brown and the City contend the trial court erred in granting Todd's temporary injunction. Specifically, they argue that Todd offered no evidence, or in the alternative, insufficient evidence, at the hearing on his motion for temporary injunction establishing his probable right to recovery and probable injury if the injunction did not issue. We reverse the trial court's granting of a temporary injunction only if the record shows a clear abuse of discretion. *See Landry's Seafood Inn & Oyster Bar–Kemah, Inc. v. Wiggins,* 919 S.W.2d 924, 926 (Tex.App.—Houston [14th Dist.] 1996, no writ). This finding is appropriate when the trial court acts arbitrarily and unreasonably, without any reference to guiding rules or principals, or when it misapplies the law to the facts. *See id.* A trial court does not abuse its discretion when the evidence tends to support the cause of action alleged. *See Munson v. Milton,* 948 S.W.2d 813, 815 (Tex.App.—San Antonio 1997,writ denied). Further, a trial court does not abuse its discretion if it bases the temporary injunction on conflicting evidence. *See General Tire, Inc. v. Kepple,*

970 S.W.2d 520, 526 (Tex.1998); *Landry's,* 919 S.W.2d at 926–27. When we employ an abuse of discretion standard of review, we do not review factual issues under traditional legal and factual sufficiency standards. *See IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 445 (Tex. 1997). Legal and factual sufficiency claims are not independent grounds of error, although they are factors we may weigh in determining whether the trial court abused its discretion. *See id.*

██ An applicant seeking a temporary injunction must establish a probable right of recovery and probable injury. *See Resolution Trust Corp. v. Chair King, Inc.,* 827 S.W.2d 546, 548 (Tex.App.— Houston [14th Dist.] 1992, no writ). The applicant need not establish that he will prevail at trial, but only that he is entitled to preservation of the status quo. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993).

██ The trial court's order found that Todd would be irreparably injured by the loss of his authority if the injunction did not issue.[7] First, we consider whether Todd established a probable injury, consisting of imminent harm, irreparable injury, and lack of an adequate remedy at law. *See T–N–T Motorsports, Inc. v. Hennessey,* 965 S.W.2d 18, 23–24 (Tex.App.— Houston [1st Dist.] 1998, pet. dism'd). At first blush, it seems Todd lost his authority at the moment Brown promulgated EO 1– 8, and, therefore, the injury has already occurred and the harm is not imminent. However, EO 1–8 is without effect unless enforced. Once enforced, employees, who presumably will adhere to the order, cannot discriminate on the basis of sexual orientation and are therefore limited in their ability to act. Todd and the city council is undermined at the moment it is effective against employees, because they allowed discrimination based on sexual or-

---

**7.** Although Todd also claims irreparable injury based on two other injuries, the trial court granted the temporary injunction based on the usurpation alone. Because we hold that the usurpation is an immediate, irreparable injury, we do not need to address the other injuries or the City's arguments that they do not support the injunction.

ientation by their unwillingness to enact parallel rules. Thus, it is only when the order is enforced that Todd lost authority. By granting a temporary injunction, the trial court precluded the usurpation of city council's power, and the power of Todd as a member of that council, which could not have been undone by any subsequent decision of the trier of fact. Usurpation is more than the prospect of injury; it is an injury that would result instantly upon enforcement of the executive order. Thus, the injury is imminent.

Next, we consider whether the injury is irreparable. Irreparable injury may be shown if damages cannot be measured by a certain pecuniary standard. *See AIG Risk Management, Inc. v. Motel 6 Operating L.P.*, 960 S.W.2d 301, 309 (Tex.App.—Corpus Christi 1997, no pet.). Further, a legal remedy is inadequate if damages are difficult to calculate or their award may come too late. *See T–N–T*, 965 S.W.2d at 24. Todd's loss of authority is not compensable by monetary damages. Thus, Todd established irreparable harm and no adequate remedy at law if the injunction did not issue. The trial court did not abuse its discretion in finding Todd established a probable injury.

We now consider whether Todd established a probable right to recovery. An applicant for a temporary injunction need only allege a cause of action and offer evidence that tends to support the right to recover on the merits. *See James v. Wall*, 783 S.W.2d 615, 618 (Tex.App.—Houston [14th Dist.] 1989, no writ). Here, the city charter, which was admitted as an exhibit for Brown and the City, establishes that the city council at least has approval power over non-discrimination rules for city employees, and it arguably gives the city council the right to promulgate them. Brown and the City stipulated that Brown did not obtain council approval prior to enacting EO 1–8. Finally, Brown and the City proffered the executive order as an exhibit, and it clearly creates a non-discrimination rule for city employees. This evidence tends to support the trial court's finding that Todd has a probable right of recovery. Therefore, we cannot say the trial court abused its discretion in finding Todd had a probable right to recovery.

Brown and the City also contend the injunction could not issue without Todd's testimony. However, the evidence presented sufficed to establish Todd's probable injury and probable right of recovery. As such, Todd's testimony would not have added to evidence regarding a probable injury.

Because we find that the trial court did not abuse its discretion in finding that Todd established a probable injury and a probable right of recovery, we find the court did not err in granting Todd's application for a temporary injunction. Accordingly, we overrule Brown's and the City's second cross-point and affirm the order of the trial court.

MAURICE E. AMIDEI, Justice, dissenting on motion for rehearing.

Todd had standing and the ability through his suit to invoke the trial court's subject-matter jurisdiction. Todd has shown that a real controversy exists between him and the City of Houston and Mayor Brown which can be determined by the injunction and judicial declaration sought. This jurisdiction cannot be affected by another party to the suit such as Hotze. The trial court was not deprived of jurisdiction over Hotze's suit on the basis of Hotze's alleged "lack of standing." If Todd's suit had subject-matter jurisdiction then it is immaterial whether Hotze had standing. *See Nationwide Prop. & Cas. Ins. Co. v. McFarland*, 887 S.W.2d 487, 491 (Tex.App.—Dallas 1994, writ denied). In *Nationwide*, insured McFarland was injured when Mashewske caused insured's car to fall on him; the insurance company sued McFarland and Mashewske for declaratory judgment that Mashewske was not a "covered person" under the policy;

McFarland and Mashewske counter-claimed for the opposite declaration; and, although the insurance company claimed McFarland did not have standing to assert Mashewske's rights under the policy, the court held that since the trial court had subject matter jurisdiction over the suit, McFarland's standing or lack of standing could not deprive the court of jurisdiction and McFarland's counterclaim could be decided in the case. *See id.*

As I outlined in my original dissent in this case, Hotze is in a better position than Todd as to standing because he was involved and voted in the initiative and referendum whereas Todd did not. Hotze as a lawmaker regarding the initiative and referendum demonstrates he would have standing to sue in behalf of the other participants and voters in that referendum to invoke the court's remedial powers in their behalf, and to obtain a declaration, injunction, or some other form of prospective relief which would inure to his and the other participants and voter's benefit. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447–48 (Tex.1993). Hotze's status as a law maker possesses an interest distinct from the general public and the City's actions through Mayor Brown caused him some special injury. By signing the initiative petition and voting for the proposition that passed gives Hotze a justiciable interest in seeing that proposition is not subverted by a void and illegal executive order by Mayor Brown. *Blum v. Lanier*, 997 S.W.2d 259 (Tex.1999); *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1951). Mayor Brown's executive order was not a discretionary act, and he and the City of Houston through Mayor Brown have a ministerial duty to correct the order and make the correction a part of the City's Official Records. Hotze is entitled to a declaratory judgment and mandamus to require such correction.

I do agree that Todd had standing and capacity to bring this suit, and if he has standing to invoke the subject-matter jurisdiction of the trial court, it is immaterial whether Hotze has standing, although I would hold both had standing.

I respectfully dissent. I would reverse the trial court's order dismissing Hotze for lack of standing.