# IN THE SUPREME COURT OF TEXAS

No. 19-0595

KENNETH L. HAEDGE, ET AL., PETITIONERS,

v.

CENTRAL TEXAS CATTLEMEN'S ASSOCIATION, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

## PER CURIAM

When a judgment is "for something other than money or an interest in property," a supersedeas bond "must adequately protect the judgment creditor against loss or damage that the appeal might cause." TEX. R. APP. P. 24.2(a)(3). This case involves how "loss or damage" is calculated on release of a supersedeas bond. After Petitioners lost the underlying appeal, the trial court ordered them to pay $7,000 from the supersedeas bond. The court of appeals reversed and required Petitioners to pay $114,280.26 from the bond. The court of appeals calculated this amount based on the expense Petitioners would have incurred if the judgment had not been superseded. The proper measure, however, was the actual loss Respondent suffered because the judgment was superseded. We reverse the judgment of the court of appeals and reinstate the trial court's order on the supersedeas bond.

## I.       Background

In 1942, the United States Army acquired land in central Texas through eminent domain to create Fort Hood. The previous owners grazed cattle on the land. As part of the compensation arrangement, the Government let the landowners and their descendants continue to graze cattle on the land. The owners established a non-profit corporation, the Central Texas Cattlemen's Association, to represent the members, manage grazing rights, and pay lease fees to the Army. CTCA's lease with the Army authorizes CTCA to graze no more than 2,000 head of cattle on the Army's land at any given time. Membership in CTCA is voluntary but only open to descendants of the original landowners. Members are allotted shares that determine how many head of cattle each is allowed to pasture on the land.[1] CTCA collects dues from members ("assessments") in proportion to their shares to pay for its costs and the lease fees.

CTCA's bylaws allow for cancelation of a member's shares for violation of the association's bylaws, rules, or regulations. Petitioners (collectively, the Haedge Group) are all cattle ranchers and previous members of CTCA. In 2015, CTCA cancelled their shares after they allegedly erected unauthorized cattle pens on the leased land. The Haedge Group sued CTCA and individual board members to challenge the ouster, alleging causes of action for fraud, conversion, breach of contract, and defamation.

CTCA moved for summary judgment, which the trial court granted in part. After a trial on the remaining issue, the trial court rendered judgment that the Haedge Group take nothing. The parties understand that judgment to allow the ouster of the Haedge Group members from the land.

---

[1] 1 share = the right to pasture 1.6 head of cattle.

The Haedge Group appealed and filed a motion in the trial court to suspend enforcement of the judgment during the appeal. The trial court allowed the Haedge Group to suspend the judgment by posting a $2,500 supersedeas bond. The parties interpreted the judgment's suspension to mean the Haedge Group could keep its cattle on the leased land during the appeal.

CTCA filed a motion in the court of appeals challenging the trial court's order suspending enforcement of the judgment. *See* TEX. R. APP. P. 24.4(a)(4). On March 3, 2016, the court of appeals ruled that the trial court order allowing the Haedge Group to supersede the judgment was appropriate, but the amount of the bond was inadequate to protect CTCA. *Haedge v. Cent. Tex. Cattlemen's Ass'n*, No. 07-15-00368-CV, 2016 WL 836084, at *6–8 (Tex. App.—Amarillo Mar. 3, 2016, order) (per curiam). The court of appeals increased the supersedeas bond to $132,400. *Id.* at *8–9. This figure was based on (1) its estimation that the appeal would last two years multiplied by (2) evidence that it would cost the Haedge Group approximately $66,200 per year to lease alternative land upon which to graze their cattle. The Haedge Group posted a bond in that amount.

During the appeal, all but one of the Haedge Group plaintiffs continued to make their regular membership payments to CTCA as any other member would. One plaintiff failed to make $7,000 in payments.

The court of appeals affirmed the trial court's take-nothing judgment. The Haedge Group petitioned for review to this Court. That petition was denied. On December 5, 2017, the court of appeals in its mandate sent the case back to the trial court with the instruction that CTCA

> recover of and from the supersedeas bond filed by [the Haedge Group], and their surety, Insurors Indemnity Company, all cattle grazing fees and costs, if any, accrued during the pendency of the appeal not to exceed the amount of the supersedeas bond, as determined by the court below and consistent with this Court's order on supersedeas dated March 3, 2016 . . . .

The trial court held a hearing on the parties' competing motions for release of the supersedeas bond. After the hearing, the trial court ordered the parties to submit affidavits to establish what damage, if any, was incurred by CTCA during the pendency of the appeal. After consideration of the evidence, the trial court ruled that CTCA was entitled to $7,000 from the supersedeas bond—the total amount of membership payments unpaid by Haedge Group members—but nothing else. The trial court signed findings of fact and conclusions of law in support of this ruling. CTCA appealed, and the court of appeals reversed.

The court of appeals held that the trial court failed to properly carry out the court of appeals' mandate and improperly calculated CTCA's damage. ___ S.W.3d ___ (Tex. App.—Amarillo 2019). The court of appeals decided that its original order had already established that, should CTCA prevail on appeal, $66,200/year would constitute CTCA's damage for delaying the ouster of the Haedge Group members. According to the court of appeals, the Haedge Group received this benefit even though the trial court had rendered a take-nothing judgment against them. "CTCA proved that it was prevented from grazing approximately 325 head of cattle on the Fort Hood property for the period of July 10, 2015, when the trial court entered its take-nothing judgment on the Haedge group's suit, through December 5, 2017, when this Court issued mandate in the underlying appeal." *Id.* at ___. Based on the duration of the appeal at the rate of $66,200/year, the court of appeals calculated that CTCA suffered $159,242.76 in damage as a result of the supersedeas. Because the Haedge Group paid $44,962.50 in dues during the appeal, that amount was subtracted from the damage award. The court of appeals rendered judgment that CTCA recover $114,280.26 from the supersedeas bond, and the Haedge Group petitioned for review.

4

## II.    Analysis

### A.    Standard of Review

Appellate review of the calculation of the amount to be recovered from a supersedeas bond is generally for abuse of discretion. *See In re Smith*, 192 S.W.3d 564, 570 (Tex. 2006) (reviewing amount of supersedeas bond to suspend money judgment for abuse of discretion); *Klein Indep. Sch. Dist. v. Fourteenth Court of Appeals*, 720 S.W.2d 87, 87 (Tex. 1986) ("The sole issue before this court is whether the trial court abused its discretion in refusing to allow [a party] to supersede the injunctive portion of the judgment."); *State v. Lain*, 349 S.W.2d 579, 586 (Tex. 1961) (reviewing amount of supersedeas bond for abuse of discretion where the trial court rendered judgment quieting title and granting injunctive relief). We employ the same standard of review here. Under an abuse of discretion standard, we defer "to the trial court's factual determinations if they are supported by evidence," but review legal determinations de novo. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). In this case, the relevant facts are not in dispute. We defer to the trial court's factual determinations and examine only the legal question of how damage should be calculated on the supersedeas bond.

### B.    Calculation of Loss or Damage on a Supersedeas Bond

The trial court set the supersedeas bond at $2,500. On the original motion challenging the bond, the court of appeals increased the bond amount to $132,400 based on evidence presented that "it would cost [the Haedge Group] approximately $66,200 per year to lease land upon which they could graze their cattle." *Haedge*, 2016 WL 836084, at *3. In the present appeal, the court of appeals held "that the cost of alternative grazing lands would represent the damages to CTCA during the pendency of the appeal," as that "amount represents the 'cost' to CTCA of being put in

5

the position of being required to forego the use of the Haedge group's 203.5 shares representing 325 head of cattle." ___ S.W.3d at ___. Under the circumstances of this case, that calculation of damages was erroneous.

Supersedeas bonds "must adequately protect the judgment creditor against loss or damage that the appeal might cause." TEX. R. APP. P. 24.2(a)(3). This rule requires calculating the "loss or damage" that the judgment creditor—CTCA here—faces during the appeal, not the avoided losses or other benefit that might accrue to the judgment debtor if the judgment is superseded. "The common definition of damage is loss due to injury: injury or harm to person, property, or reputation." *Barnes v. Mathis*, 353 S.W.3d 760, 765 (Tex. 2011) (quotation marks and citation omitted); *accord Damage*, *Black's Law Dictionary* (10th ed. 2014) ("loss or injury to person or property"). "Loss or damage" in the supersedeas context refers to "monetary or material losses ascertainable by proof, either by the judgment itself, or, where that is not conclusive, by evidence relating to proof of damages generally." *Los Campeones, Inc. v. Valley Int'l Props., Inc.*, 591 S.W.2d 312, 314 (Tex. App.—Corpus Christi 1979, no writ) (quoting *State v. Watts*, 197 S.W.2d 197, 198 (Tex. App.—Austin 1946, writ ref'd)).

Here, CTCA demonstrated no monetary or material losses as a result of the appeal apart from one plaintiff's failure to pay $7,000 in dues. CTCA points to the calculation of the supersedeas bond amount made by the court of appeals on the original motion challenging the bond, but this is insufficient to prove any actual loss or damage CTCA has sustained. We have previously noted that the initial calculation of a supersedeas bond for appeal is different from the final calculation of loss or damage that results from the appeal. *McFadin v. Broadway Coffeehouse,*

6

*LLC*, 539 S.W.3d 278, 285 (Tex. 2018).[2] The court of appeals erred by calculating CTCA's damages based on the Haedge Group's estimated cost to lease alternative grazing pastures. The expense the Haedge Group *would have* incurred to remove their cattle from the Fort Hood property and find alternative pastures does not alone establish the loss or damage that CTCA *actually* incurred.

It is undisputed that CTCA continued to receive dues payments from the Haedge Group during the appeal, with the exception of $7,000. It is also undisputed that CTCA could never have received $66,200 per year or any other comparable market price for the grazing rights at issue. Had the Haedge Group's ouster been immediate, the most CTCA could have expected was to charge other members the same dues payments it assessed the Haedge Group for grazing rights during the same time period. Based on the structure of the Association and its lease agreement with the Army, CTCA could not have profited from re-leasing the Haedge Group's grazing rights at prevailing market rates. Instead, if the judgment had not been superseded, CTCA would simply have replaced the Haedge Group's dues with dues paid by other members. As a result, CTCA has not shown loss or damage beyond the $7,000 amount the trial court ordered released to it.

The court of appeals also suggested that, because CTCA was deprived of the right to transfer the Haedge Group's shares, CTCA's other members were damaged in the loss of these shares. But there is no evidence in the record establishing that other members of CTCA incurred additional costs pasturing their cattle elsewhere and would have availed themselves of the Haedge

---

[2] "[T]he evidence presented at the hearing setting the bond amount was evidence of what damages the appeal *might* cause Coffeehouse if its judgment were not immediately enforced, not what damages the appeal actually *did* cause it." *McFadin*, 539 S.W.3d at 285.

Group's shares had they been available. Indeed, at the hearing on release of the bond, CTCA's president, Brandon Belt, submitted an affidavit in which he stated, "The damages is to CTCA, not directly to its members, as the lease is between CTCA and the Army, not between the members and the Army." Even if CTCA had argued and made a showing that its members were harmed, it is doubtful this would be sufficient to prove damage to the Association itself, which was the only defendant below.[3]

### III.    Conclusion

"[T]he purpose of a supersedeas bond is to preserve the status quo by staying the execution or enforcement of the judgment or order appealed from pending the appeal." *Shell Petroleum Corp. v. Grays*, 62 S.W.2d 113, 118 (Tex. 1933). Here, that is precisely what occurred in the trial court. During the pendency of the appeal, CTCA was in the same position it had been prior to obtaining a favorable judgment. It continued to receive the same membership dues it otherwise could have received had the Haedge Group members been ousted earlier and their shares transferred. Except for the $7,000 deficiency, CTCA did not demonstrate any loss or damage caused by the supersedeas. It is entitled to no further amounts from the bond. Accordingly, without hearing oral argument, we reverse the court of appeals' judgment and reinstate the order of the trial court on release of the supersedeas bond. *See* TEX. R. APP. P. 59.1.

---

[3] The court of appeals cited our holding in *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 447 (Tex. 1993), for the proposition that an association can claim damage suffered by its members. That case involved associational standing determining when an association may bring suit on behalf of its members. *See id.* Here, CTCA was sued in its own right as an organization. Its members were not parties, and CTCA offered no evidence of damage to any particular members. Even if an organization could sometimes recover for damage to its individual members in this context, it cannot do so without evidence demonstrating that individual members were actually damaged.

**OPINION DELIVERED:** June 26, 2020